No. 74–6118. WATTS *v.* UNITED STATES. C. A. 5th Cir. Motion for leave to proceed *in forma pauperis* and certiorari granted. Upon representation of the Solicitor General set forth in his brief for the United States filed May 2, 1975, judgment vacated, and case remanded to the United States District Court for the Northern District of Georgia to permit the Government to dismiss charges against petitioner. MR. JUSTICE DOUGLAS took no part in the consideration or decision of this motion and petition. Reported below: 505 F. 2d 951.

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE WHITE and MR. JUSTICE REHNQUIST join, dissenting.

Petitioner was acquitted in the Superior Court of Fulton County, Ga., of aggravated assault with intent to rob and carrying a concealed weapon. Thereafter, petitioner was convicted in federal court of knowingly possessing an unregistered firearm, a sawed-off shotgun, in violation of 26 U. S. C. § 5861 (d). The federal charge arose out of the same episode, and involved the same weapon, as the state prosecution. The Court of Appeals affirmed the judgment of conviction, rejecting, *inter alia,* petitioner's contention that the state acquittal barred his federal prosecution under the Double Jeopardy Clause of the Fifth Amendment. 505 F. 2d 951.

The evidence at petitioner's federal trial established that in connection with a robbery attempt on November 14, 1973, petitioner, accompanied by another, assaulted Robert McGibbon with a 12-gauge, single-barreled, sawed-off shotgun. McGibbon managed to break away from his assailants and immediately reported the inci-

dent to Officer Ward, an Atlanta policeman who was nearby. Ward located petitioner and a companion a few blocks away and, on the basis of McGibbon's description, took them into custody. As petitioner's companion was entering the patrol car, Ward noticed him bend down "as if he was putting something under the car." Subsequent investigation revealed the sawed-off shotgun, which was not registered to petitioner, under the patrol car.

In rejecting petitioner's double jeopardy claim, the Court of Appeals pointed out that, under Ga. Code Ann. §§ 26–9911a, 9913a, possession of a sawed-off shotgun 15 inches or less in length is prohibited, whereas the shotgun involved here had an overall length of 16½ inches. The Court of Appeals held that, in any event, the prior state prosecution and acquittal were not a bar to the subsequent federal prosecution under *Abbate* v. *United States,* 359 U. S. 187 (1959), and *Bartkus* v. *Illinois,* 359 U. S. 121 (1959). Although he agrees with the latter conclusion, the Solicitor General nevertheless now requests the Court to vacate the judgment of the Court of Appeals and remand the case to the District Court to permit the Government to move for dismissal of the charges against petitioner. The request is based on the Government's belated claim that the prosecution of petitioner under § 5861 (d) "did not conform to the Department of Justice policy of not prosecuting individuals previously tried in a state court for offenses involving the same acts, unless there exist 'most compelling reasons,' and then only after the specific approval of the appropriate Assistant Attorney General has been obtained."

In support of his position, the Solicitor General states that no approval was sought in this case, and he concludes that it "does not present circumstances which

constitute 'compelling reasons' for the federal prosecution." He notes that the State did not indict petitioner for possession of a sawed-off shotgun, but for *carrying a concealed weapon,* as to which the length of the shotgun was irrelevant, and he speculates that, since there was ample evidence of concealment, the state jury likely acquitted petitioner because of insufficient evidence of possession. In light of the fact that possession is an element of the federal offense proscribed by § 5861 (d), the Solicitor General reasons that the policies underlying the Department's internal directive "are directly involved."

Since this is the third occasion in recent months upon which I have been unable to agree with the Court's acquiescence in a request by the Government for aid in implementing the policy of the Department of Justice, I deem it appropriate to state my views. See also *Hayles* v. *United States,* 419 U. S. 892 (1974); *Ackerson* v. *United States,* 419 U. S. 1099 (1975).

## I

The policy upon which the Government relies was first promulgated shortly after our decisions in *Abbate* and *Bartkus, supra,* in a memorandum from Attorney General Rogers to United States Attorneys. See *Petite* v. *United States,* 361 U. S. 529, 531 (1960). Noting the duty of federal prosecutors "to observe not only the rulings of the Court but the spirit of the rulings as well," and advocating continuing efforts "to cooperate with state and local authorities to the end that the trial occur in the jurisdiction, whether it be state or federal, where the public interest is best served," the Attorney General concluded that if "this be determined accurately, and is followed by efficient and intelligent cooperation of state and federal law enforcement authorities, then considera-

tion of a second prosecution very seldom should arise." He directed that "no federal case should be tried when there has already been a state prosecution for substantially the same act or acts without [the approval of the appropriate Assistant Attorney General after consultation with the Attorney General]." Department of Justice Press Release, Apr. 6, 1959; N. Y. Times, Apr. 6, 1959, p. 19, col. 2.

I question whether the action taken by the Court in *Hayles* and *Ackerson, supra,* and the action taken today represent "efficient and intelligent cooperation" among federal law enforcement authorities, let alone between state and federal authorities. In this case, for instance, we are asked to intervene in order that the Government may move for the dismissal of charges lawfully brought by it in the first instance, tried before a jury in the District Court, and the conviction upon which was affirmed by an opinion of a panel of the Court of Appeals. It requires more than the desire of the Department of Justice to keep its house in order to persuade me that the Court should have a hand in nullifying such a substantial commitment of federal prosecutorial and judicial resources. Indeed, since it appears that the trial and conviction of petitioner were without reversible defect, constitutional or otherwise, and that the putative hardship which the policy was designed to prevent has already been suffered and cannot be remedied, I believe that the Court's action today ill serves the "interest of justice," *Petite* v. *United States, supra,* at 531, if that phrase be interpreted to comprehend society's interest in the efficient use of its judicial resources to convict the guilty. Cf. *Orlando* v. *United States,* 387 F. 2d 348, 349 (CA9 1967) (Pope, J., dissenting). The only purpose served by the Court's action is to aid the Government in emphasizing to its staff lawyers the need for a con-

sistent internal administrative policy. But with all deference I suggest that is not a judicial function and surely not the function of this Court.

Neither the rulings of this Court, nor their "spirit," require that we sacrifice the careful work of the District Court and the Court of Appeals—to say nothing of the public funds which that work required—to the vagaries of administrative interpretation. If the Government attorneys who initiated this prosecution did so without consulting their superiors, that is an internal matter within the Department of Justice to be dealt with directly by that Department, but it should not bear on a judgment lawfully obtained. Corrective action more appropriately lies through prospective enforcement of departmental policies. Cf. *Sullivan* v. *United States,* 348 U. S. 170, 172–174 (1954); *United States* v. *Hutul,* 416 F. 2d 607, 626–627 (CA7 1969), cert. denied, 396 U. S. 1012 (1970). The resources of law enforcement agencies and courts, once committed to a rational course of action culminating in a valid judgment, should not be dissipated without better reason.

## II

Quite apart from my general disagreement with the use of this Court to implement executive policy decisions, it is not at all clear to me that any federal court, and particularly this Court, should automatically conform its judgments to results allegedly dictated by a policy, however wise, which the judicial branch had no part in formulating. If these doubts be well founded, independent judicial appraisal is required *a fortiori* where, as here, the policy purportedly derives from the rulings of this Court and their "spirit." The federal courts have no role in prosecutorial decisions, but, once the judicial power has been invoked,

it is decidedly the role of federal courts to interpret the decisions of this Court and to assess the validity of judgments duly entered.

Judicial involvement in an independent appraisal of the Justice Department's application of its internal policy in this instance, however, could give rise to a form of surveillance in other instances. Surely it is not our function either to approve or disapprove internal prosecutorial policies and even less so their implementation. But the course on which the Government has persuaded this Court to embark requires us to do just that unless we are blindly to accept the Government's belated analysis. Cf. *United States* v. *Williams,* 431 F. 2d 1168, 1175 (CA5 1970), rev'd en banc on other grounds, 447 F. 2d 1285 (1971), cert. denied, 405 U. S. 954 (1972).

## III

The present case vividly demonstrates the difficulties which confront judges who would undertake to do more than rubberstamp the policy decisions of the Department of Justice. The policy relied on, which appears to have been cast in terms to provide great flexibility and discretion, inevitably involves considerations and nuances inappropriate for judicial evaluation. Moreover, such evaluation is impossible without access to data regarding other applications of the policy in the 16 years since it was publicly announced. Finally, a comparison of the 1959 directive with the Government's statement of the policy in this case reveals variations which are not explained and of course need not be explained so long as application of the policy remains a matter within the Department of Justice. The 1959 memorandum referred to "a state prosecution for substantially the same act or acts." However, in speculating as to the basis for the verdict acquitting petitioner in state court, the Govern-

ment seems to suggest that the relevant inquiry under the policy is not whether the charges in federal court are based on the "same act or acts" as those which founded the state prosecution, but rather whether the state and federal offenses share common elements or require the same evidence for conviction. Cf. *Abbate* v. *United States*, 359 U. S., at 196–197 (opinion of BRENNAN, J.).

For present purposes, it is unnecessary to pursue these ambiguities. The factors I have discussed suggest the incompatibility of the action the Court takes today with the goal of "efficient and intelligent cooperation" which animated the Attorney General's 1959 memorandum, and with the "interest of justice," broadly conceived. The Department's 1959 policy is in no way questioned. But assuming as I do that *Abbate* and *Bartkus* remain good law, there is no reason for this Court to lend its aid to the implementation of an internal prosecutorial policy applicable only by speculation on our part, and there are abundant reasons for not doing so.