**In re Issac WASHINGTON and Peter Rinaldi, Defendants-Appellants.**

No. 75–1773.

United States Court of Appeals, Fifth Circuit.

May 24, 1976.

---

Melvyn Kessler, Miami, Fla. (court appointed), for Sole.

Mark R. Baer, Miami, Fla. (court appointed), for Rinaldi.

James J. Hogan, Miami Beach, Fla. (court appointed), Joseph Mincberg, Miami, Fla. (court appointed), for Washington.

Terence M. Brown, Appellate Section, Crim. Div., U. S. Dept. of Justice, Washington, D. C., Robert W. Rust, U. S. Atty., Miami, Fla., for appellee.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

■ Defendants Washington and Rinaldi join with the government in its appeal of the district court's denial of a government motion to dismiss the indictment against defendants. Relevant facts are as follows: defendants were convicted in state court for conspiracy to rob the Doral Beach Hotel in Miami, Florida. Following that conviction, defendants were likewise tried and convicted in federal court[1] for federal crimes arising out of the same facts. While their conviction was pending on appeal before this court, defendants Sole[2] and Rinaldi filed a motion to supplement the record on appeal with the United States Department of Justice Policy [hereinafter referred to as Petite Policy][3] that precludes the Department from trying a person a second time on essentially the same charges that were the subject of a state prosecution. The government responded to the motion, affirming the existence of the policy, and subsequently moved for remand of the case to the district court to allow the government to dismiss the indictment; we granted the government's motion to remand.[4] Thereafter, the government filed a motion with the district court, pursuant to F.R.

---

1. A mistrial resulted from defendant's first trial in federal court; defendants were convicted in their second federal trial.

2. Pasquale Sole, originally a defendant-appellant in this case, died during appeal of this case. We have, therefore, granted the joint motion of counsel to remand the case to the district court to allow counsel to move for dismissal of the indictment against him.

3. This policy, established by Attorney General William Rogers in 1959, received its name from the case in which it was first recognized judicially: *United States v. Petite*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). Promulgated through a Department of Justice Press Release on April 6, 1959, the policy provides, in the main, that a federal prosecution should not follow a state prosecution predicated on the same act or acts unless a compelling federal interest is involved, in which case prior authorization should be obtained from the appropriate Assistant Attorney General.

4. Counsel for the government argues that implicit in our order to remand was an order to the district court to dismiss the indictment and that, consequently, that court's denial of the motion for dismissal violated our order. The government relies on the fact that it asked this court to remand "in order to dismiss the indict-

Cr.P. 48(a), to dismiss the indictment, arguing that federal prosecution of defendants had violated its own internal policy. Utilizing the discretion accorded it under Rule 48(a), the district court denied the motion. Both the government and the defendants appeal that denial.

■ In denying the government's motion to dismiss, Judge King relied on language in Rule 48(a),[5] allowing dismissal of an indictment only "by leave of court," to justify his position that the prosecution did not have total discretion over this matter. We agree that the trial court has a role in any decision to dismiss an indictment. While this court has held, *en banc*, that the judiciary cannot require the executive branch to bring prosecution against an individual, *United States v. Cox*, 342 F.2d 167 (5th Cir. 1965), there is a distinction between the prosecution's power to initiate and its power to terminate a prosecution. *United States v. Cowan*, 524 F.2d 504, 505 (5th Cir. 1975). The issue here is the circumstances under which the trial court can exercise its discretion to deny prosecution's motion to dismiss.

In his order denying the government's motion to dismiss, Judge King cited two primary reasons for his decision: (1) the government's motion to dismiss was not made until after the trial had been completed and a conviction had been obtained, and (2) the government's admissions, during the trial, of its knowledge that a state conviction had been obtained and of its intention, nonetheless, to pursue the federal prosecution.

■ The first reason—the post-conviction timing of the government's motion—is not

sufficient, alone, to justify the court's refusal to dismiss the indictment. In *Watts v. United States,* 422 U.S. 1032, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975), the Supreme Court vacated the judgment and remanded a case, in which the government had moved for dismissal on grounds of the Petite Policy after a conviction had been obtained, to permit the government to dismiss charges against the defendant. While the opinion in *Watts* was only a memorandum order that did not analyze the relevancy of the stage of proceeding at which the motion is made, the result reached there persuades us that a motion for dismissal pursuant to Rule 48(a), and based on a violation of the Petite Policy, cannot be denied merely because it was made after a conviction had been obtained.

■ The second reason advanced in the order—the government's knowledge of the state conviction during the federal prosecution—raises serious questions about the government's good faith in this matter. In his order denying the motion for dismissal, Judge King noted that the government prosecutor was fully informed of the state prosecution of defendants:

> The government also stated at the hearing that at no time during the first trial, which ended in a mistrial, or during the second trial, which resulted in the conviction of these defendants, was the policy, or its violation, ever brought to the court's attention. In fact, the court specifically inquired of the special trial attorney sent to Miami from Washington by the Department of Justice to try this case, why the government was insisting on a federal trial of these defendants.

ment" and that we "granted" that motion. Our order read as follows: "It is ordered that appellee's motion to remand this case . . . to the district court for the Southern District of Florida is granted." Conspicuously omitted from our order, was any order to the district judge to dismiss the indictment, without review. This omission, coupled with the discretion granted to the trial court judge by Rule 48(a), leads us to the conclusion that our original order did not require automatic dismissal by Judge King.

5. Rule 48(a) states:

> The Attorney General or the United States Attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

*Government's trial counsel advised the court that the Department of Justice was adamant in their decision that the federal trial proceed because there was grave concern that the state convictions would be reversed on appeal.* The Department of Justice trial attorney, at a special conference called for the purpose of discussing the offer of at least one defendant to plead guilty, stated that the Department's position was that it could not agree to any plea involving concurrent confinement, and he had been *instructed* to proceed with the trial. Under those circumstances, it is clear the Department of Justice was completely aware of the proceedings in the Southern District of Florida. Record, p. 33 (emphasis added). From the government attorney's comments at trial, it seems obvious that the Department of Justice was not only aware that defendants had been tried and convicted on state charges, but also had consciously weighed the possibility of not proceeding on federal charges because a state conviction had been obtained. Of course, the government could argue that mere awareness of a previous state prosecution does not insure that the prosecuting attorney is aware of the Petite Policy or that the policy has been complied with, in that compliance requires the approval of the appropriate Assistant Attorney General. Yet, at some point, the public interest in avoiding manipulation of the judicial system demands that the Department of Justice take responsibility for administering its own internal rules. That point has been reached in this case.

Here, Judge King inquired of the prosecuting attorney why the Department of Justice was pursuing this federal action when a state conviction had been obtained and why, in the alternative, the government could not accept the tendered pleas of guilty with the suggestion that the federal sentences run concurrently with the state terms. The trial attorney answered that the decision had been made *in Washington,* by presumably appropriate officials, to prosecute this matter to the hilt and not to accept concurrent sentences. In addition, the attorney stated that because the Department feared reversal of the state conviction, it was adamant that federal prosecution proceed.

There are several possible explanations for the government's one hundred eighty degree turn on the issue of federal prosecution of the defendants. The first possibility: the trial attorney had obtained no permission from Washington, but was merely acting on his own in his decision to prosecute defendants on federal charges, even though state convictions had been obtained. There is, however, no evidence to indicate that this trial attorney was lying and absent such evidence we refuse to infer such blatant bad faith from an officer of the court. Also, even if the trial attorney had not received explicit instructions from Washington as to whether a federal prosecution was appropriate after state convictions had been obtained, he was on notice, through the questioning of Judge King, to inquire further into the matter with the proper officials from the Department. Rather, evaluating the government's statements during trial and its later conduct, another explanation seems much more probable to us: government officials decided to prosecute defendants, notwithstanding their internal policy against such a prosecution, because of their fear that the state convictions would be reversed upon appeal. Then, after the state conviction was upheld and defendants raised, for the first time, the government's violation of its own internal policy as error upon appeal, the government decided that the case should never have been brought.[6] Indeed, the government never alleges that its non-compliance with the Petite Policy was inadvertent. It merely states that the appellate attorney for the government looked into the policy after appeal was brought and decided that the trial attorney should not have prosecuted the defendants. In fact, the govern-

---

6. The state convictions were affirmed on April 30, 1974; the government moved for dismissal of the federal indictments on September 30, 1974.

ment violated its policy by even trying defendants after they had been tried in state court, regardless of the status of those convictions after appeal, since the policy speaks in terms of state prosecutions, not state convictions. Yet, judging from the government's position at trial, it was prosecuting defendants on federal charges only because it feared reversal of the state conviction. Indeed, the government contended at oral argument that it was the sole judge of when its policies were to be followed and when they were to be disobeyed.

In *Cowan v. United States, supra,* we discussed the amount of discretion accorded the judiciary in a government motion to dismiss an indictment pursuant to Rule 48(a). We noted that "the history of the Rule belies the notion that its only scope and purpose is the protection of the defendant. [Rather], it [is] manifestly clear that the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice." 524 F.2d at 512. Further:

[I]t seems altogether proper to say that the phrase 'by leave of court' in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. . . . The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed *unless clearly contrary to manifest public interest. Id.* at 513 (emphasis added).

Throughout *Cowan,* we made several references to the requirement that the government act in good faith whenever it seeks dismissal of an indictment in a pending prosecution. From our examination of the record in this case, we feel that the government has not acted in good faith in this matter.[7] If we granted their motion to

**7.** Judge Tjoflat, in his dissenting opinion, argues that our conclusion of prosecutorial bad faith is based on an appellate finding of fact unsupported by the record. He states that the only concrete fact relied upon by the majority to support a determination of bad faith is found at note 6, in which we observe that the prosecution's motion for dismissal was made after the state convictions had been affirmed by the Florida intermediate appellate court. Judge Tjoflat argues that even this one concrete object of reliance is negated by the fact that the Florida Supreme Court and the United States Supreme Court did not deny certiorari until after the government's motion had been filed. Without probing the government's beliefs, as it moved for dismissal, of the likelihood that certiorari would be granted, we respectfully dispute Judge Tjoflat's contention that the time sequence between the affirmance of the state convictions and the motion for dismissal is the only concrete fact upon which we rely in reaching our determination of prosecutorial bad faith. Our primary source of reliance lies in the prosecuting attorney's own statements during trial—statements that are very much a part of the record in that they are included in Judge King's order, and thus, constitute a finding by him. These statements include admissions that the trial attorney and his supervisors in Washington were aware of the state prosecution, but that they nevertheless were adamant in their decision to prosecute defendants on federal charges. Judge King confronted government attorneys with these statements at the hearing on the motion to dismiss, but these attorneys never rebutted the clear implications that arise from these statements; that certain unnamed people within the Department of Justice—people who apparently supervised the trial attorney and who certainly should have known about the Petite Policy—decided to prosecute defendants on federal charges even though they were aware of a state prosecution growing out of the same facts. If the trial attorney's statements were inaccurate, it was the responsibility of the government attorney to point this out to Judge King at the hearing or to this court on appeal. Judge Tjoflat argues that the record most strongly supports a theory of mere negligence by the government in not adhering to the Petite Policy; that is, government lawyers were unaware that the policy had been violated until defendants' counsel raised the issue on appeal. Yet, the government has never stated that it was unaware of the Petite conflict at trial or given any explanation for its failure to adhere to the policy. In short, the majority feels that the government has nowhere rebutted the suggestion of its bad faith that we find in the record.

dismiss, we would be encouraging a manipulation of the judiciary clearly contrary to "manifest public interest."

In making our decision to affirm, we need not decide whether the Department of Justice's uneven application of its own policy violates equal protection standards as they have been interpreted to apply to federal governmental action under the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). It is doubtful that an internal policy of the Department of Justice grants to the accused a vested right to be free from an otherwise valid prosecution. At any rate, the district judge based the exercise of his discretion on two factors: prosecutorial bad faith and the post-conviction timing of the motion to dismiss. While we have noted that reliance on the post-conviction status of the motion is not sufficient in itself to justify denial of the motion to dismiss, we do not fault the district judge for considering it as one of two factors that govern the exercise of his discretion in this case. Therefore, we hold that both the post-conviction stage at which the motion was made and prosecutorial bad faith form a valid insulation for the district judge's action from any finding by this court that his discretion was abused.

AFFIRMED.

·TJOFLAT, Circuit Judge (dissenting):

I respectfully dissent.

I agree that the government's power to dismiss an indictment under Rule 48(a) is not absolute. I also agree that a *Petite* motion may be denied if granting the motion would be "clearly contrary to manifest public interest," *United States v. Cowan, supra,* 524 F.2d at 513. With some hesitation, I agree that, although the primary purpose of the "by leave of court" requirement in Rule 48(a) is to protect the *defendant* from the government's bad faith[1], a trial judge may use his Rule 48(a) power to

prevent other types of manipulation of the judicial system. I am also willing to agree, at least *arguendo,* that one such type of bad-faith manipulation would be a governmental tactic of (a) prolonging a federal prosecution until the defendants' state court convictions were beyond reversal and then (b) moving for dismissal of the indictment after being thus assured that the defendants would not go unpunished. However, I cannot agree that the record in this case establishes this or any other type of bad faith on the part of government counsel.

I have searched this record from beginning to end without finding anything to justify the appellate factfinding indulged in by the majority. The scenario which the majority offers as the most probable version of what happened behind the scenes at the Department of Justice is the product of sheer speculation. The only concrete fact relied upon by the majority (see *supra* at n. 6) is the timing of the government's motion for dismissal. An intermediate appellate court affirmed these defendants' state court convictions on April 30, 1974, see *Scaldeferri v. State,* 294 So.2d 407 (Fla.App.1974), and the government's motion was not filed until.September 30, 1974. The majority has overlooked the later history of the state prosecution. The Supreme Court of Florida did not deny certiorari until October 3, 1974, see *Pompeo v. State,* 303 So.2d 21 (Fla.1974), and the United States Supreme Court denied certiorari only on November 11, 1974, see *Washington v. Florida,* 419 U.S. 993, 95 S.Ct. 304, 42 L.Ed.2d 266 (1974). Both of these actions, it will be noted, were subsequent to the government's motion for dismissal. An examination of the opinion of the intermediate state court reveals substantial issues which may well have engaged the attention of a higher court. Indeed, one of the five justices of the Supreme Court of Florida dissented from the denial of certiorari. See, 303 So.2d at 21. In view of these facts, I cannot join in the

---

1. See e. g., *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

majority's assumption that, after April 30, 1974, the government necessarily abandoned any fears that the state convictions might be overturned. Since this assumption is basic to the majority's finding of bad faith, I must reject that finding as well.

In my view, the following sequence of events is the one best supported by the record. The government lawyers involved in this case were simply unaware of the *Petite* policy, or at least unaware that the policy may have been violated, until defendants' appellate counsel raised this issue on August 2, 1974[2]. Government counsel then investigated, discovered the inadvertent noncompliance with Department policy, and referred the matter to the appropriate Assistant Attorney General. This official then decided that, had the proper procedures been followed, he would not have authorized the prosecution. Thereupon, without reference to the status of the state court proceedings (in which, after all, petitions for certiorari were still pending), trial counsel moved to dismiss the indictment. The most that I can charge the government with is a negligent failure to have handled the *Petite* issue earlier, without outside prodding from defense counsel. Such negligence is not the type of misconduct which will justify denying a Rule 48(a) motion. The Supreme Court routinely remands cases "to permit the Government to dismiss the charges", even when government counsel fails to discover a *Petite* violation until the case has reached the High Court. See, e. g., *Watts v. United States,* 422 U.S. 1032, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975); *Ackerson v. United States,* 419 U.S. 1099, 95 S.Ct. 769, 42 L.Ed.2d 796 (1975); *Hayles v. United States,* 419 U.S. 892, 95 S.Ct. 168, 42 L.Ed.2d 136 (1974). These cases compel the conclusion that something more than careless inattention to internal government procedures is necessary to justify resisting a *Petite* motion for dismissal.

I realize that the scenario which I have painted is not the only possible explanation of the government's conduct in this case, although it is the one most in accord with what we know of the facts. Indeed, the majority's version of events cannot be entirely excluded as a possibility. However, reversal of the order entered below does not require acceptance of my version to the exclusion of all others. To me, the granting of a Rule 48(a) motion cannot be "clearly contrary to manifest public interest" by reason of governmental misconduct, when that misconduct itself is far from "clear" or "manifest". At the very least, a finding of misconduct (particularly a finding by an appellate court) should be clearly the likeliest explanation of what actually happened. The majority's speculation does not pass this test. It is, at best, merely one of several possible reconstructions of events. There is no basis for considering it more probable than any other. It is clearly less supported by the record than the version which I have offered. I would reverse the order denying the government's motion to dismiss the indictment.

---

2. Technically, defendants' counsel introduced this issue by means of a "motion to supplement record on appeal", which essentially asked for the press release of April 6, 1959, that had led to the holding in *Petite.*