**In re Issac WASHINGTON and Peter Rinaldi, Defendants-Appellants.**

No. 75-1773.

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1976.
Rehearing Denied Jan. 19, 1977.

204

Mark R. Baer, Miami, Fla. (Court-appointed), for Rinaldi.

James J. Hogan, Miami Beach, Fla. (Court-appointed), Joseph Mincberg, Miami, Fla., for Washington.

Terence M. Brown, App. Sec., Crim. Div., U.S. Dept. of Justice, Washington, D.C., Robert W. Rust, U.S. Atty., Miami, Fla., Jerome N. Feit, App. Sec., Crim. Div., U.S. Dept. of Justice, Washington, D.C., for appellee.

Before BROWN, Chief Judge, GEWIN, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE, TJOFLAT and HILL, Circuit Judges.[*]

LEWIS R. MORGAN, Circuit Judge:

Defendants Washington and Rinaldi join with the Government in its appeal of the district court's denial of a Government motion to dismiss the indictment against defendants. Relevant facts are as follows: defendants were convicted in state court for conspiracy to rob the Doral Beach Hotel in Miami, Florida. Following that conviction, defendants were likewise tried and convicted in federal court[1] for federal crimes arising out of the same facts. While their conviction was pending on appeal before this court, defendants Sole[2] and Rinaldi filed a motion to supplement the record with the United States Department of Justice Policy [hereinafter referred to as Petite Policy][3] that precludes the Department from trying a person a second time on essentially the same charges that were the subject of a state prosecution. The Government affirmed the existence of the policy in its response to the motion and subsequently moved for remand of the case to allow it to dismiss the indictment; we granted the Government's motion to remand to the district court. Thereafter, arguing that federal prosecution of defendants had violated its own internal policy, the Government filed a motion under F.R.Cr.P. 48(a)[4] to dismiss the indictment. Utilizing the discretion accorded to it under Rule 48(a), the district court denied the motion. Both the Government and the defendants appealed that denial to a panel of this court. That panel affirmed the district court in an opinion released on May 24, 1976. *In re Washington*, 531 F.2d 1297 (5th Cir. 1976). Today, this court, *en banc*, affirms the panel's holding.

■ In denying the Government's motion to dismiss, District Court Judge King relied on language in Rule 48(a), allowing dismissal of an indictment only "by leave of court," to justify his position that the prosecution did not have total discretion over the matter. We agree that the trial court has a role in any Rule 48(a) motion to dismiss an indictment. While this court, *en banc*, has held that the judiciary cannot compel the executive branch to bring prosecution against an individual, *United States v. Cox*, 342 F.2d 167 (5th Cir. 1965), a distinction exists between the prosecution's power to initiate and its power to terminate a prosecution. *United States v. Cowan*, 524 F.2d 504, 509 (5th Cir. 1975). The issue in this case then is whether the district court properly exercised its discretion to deny prosecution's motion to dismiss an indictment that it had sought and vigorously pursued to trial.

In his order denying the Government's motion to dismiss, Judge King cited two primary factors for his decision: (1) the

---

[*] Due to illness WISDOM and THORNBERRY, Circuit Judges, did not participate in this decision.

1. Defendants' first trial in federal court resulted in a mistrial; the second federal trial culminated in the conviction of both defendants.

2. Pasquale Sole, originally a defendant in this case, died during its appeal. The original panel, therefore, granted the joint motion of counsel to remand the case to the district court to allow counsel to move for the dismissal of the indictment against Sole.

3. This policy, established by Attorney General William Rogers in 1959, received its name from the case in which it was first recognized judicially: *United States v. Petite*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). Promulgated through a Department of Justice Press Release on April 6, 1959, the policy provides, in the main, that a federal prosecution shall not follow a state prosecution predicated on the same act or acts unless a compelling federal interest is involved, in which case prior authorization should be obtained from the appropriate Assistant Attorney General. N.Y. Times, April 6, 1959, p. 19, Col. 2.

4. Rule 48(a) states:
 The Attorney General or the United States Attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

timing of the Government's motion to dismiss, which was not made until after the trial had been completed and a conviction had been obtained and (2) the Government's admissions, during the trial, of its knowledge that a state conviction had been obtained and of its intention, nonetheless, to pursue the federal prosecution.

The first factor cited by Judge King—the postconviction timing of the Government's motion—is not sufficient, alone, to justify the court's refusal to dismiss the indictment. In *Watts v. United States*, 422 U.S. 1032, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975), the Supreme Court vacated the judgment and remanded a case, in which the Government had moved for dismissal on grounds of the Petite Policy after a conviction had been obtained, to permit the Government to dismiss charges against the defendant.[5] While the opinion in *Watts* was only a memorandum order that did not analyze the relevancy of the stage of proceeding at which the motion is made, the result reached there persuades us that a motion for dismissal made pursuant to Rule 48(a) and based on a violation of the Petite Policy cannot be denied merely because it is made after a conviction has been obtained.

The second reason advanced by Judge King in his order—the Government's knowledge of the state conviction throughout its federal prosecution of defendants—raised serious questions for the panel about the Government's good faith, or lack thereof, in this matter. The panel noted that the record of the trial in the district court revealed that after the first trial had ended in a mistrial Judge King extensively questioned federal Task Force attorneys on the need for a separate federal prosecution in light of the Florida conviction for the same offense. Specifically, Judge King inquired why the Government could not accept defendants' tendered pleas of guilty with the suggestion that the federal sentences run concurrently with state sentences and, thereby, forgo a second federal trial. *In re*

*Washington*, 531 F.2d at 1300. Instead, Government trial counsel advised the court that because there was grave concern that the state convictions would be reversed on appeal, the Department of Justice was "adamant" in its decision that a federal trial proceed. The Government attorney, himself, stated that he had been "instructed" by officials in Washington to prosecute the matter "to the hilt" and not to accept concurrent sentences. 531 F.2d at 1299–1300. On the basis of these facts, a majority of the panel concluded that the Government had known all along that state convictions had been obtained against defendants and that its decision to bring the federal prosecution was motivated not by its ignorance that its own internal policies had been violated, but rather, out of its fear that state convictions would be overturned, it had consciously disregarded its own Petite Policy and brought the prosecution in question, 531 F.2d at 1300. The panel based its determination that the Government's inattention to its own policy was not inadvertent on two considerations. First, the panel found it incredible to believe that Justice Department superiors in Washington, who knew of the Florida conviction but who had nevertheless instructed the trial attorney to proceed with the federal prosecution, were unaware of the Petite Policy and its violation in this case. 531 F.2d at 1300. Second, the panel noted that the Government's conduct in this matter raised a clear inference of bad faith on its part—an inference that the Government never attempted to rebut in its hearing before Judge King or in its appeal to this court. 531 F.2d at 1301 n. 7. Indeed, the Government had never characterized its failure to adhere to its own policy as inadvertent; when asked at oral argument before the panel why the Government had not followed its internal policy in this case, the Government attorney merely stated that the reasons were not clear. For the above reasons, the panel upheld Judge King's finding of Governmental bad faith and held that on the basis of *United States*

---

5. No issue of Governmental good faith, discussed *infra*, at pp. 206–208 was raised in *Watts*.

v. *Cowan*, 524 F.2d 504 (5th Cir. 1975), the district court had not abused its discretion in denying the motion for dismissal under Rule 48(a).

 Fortunately, this panel does not have to examine the record to ferret out the Government's motivations for its inconsistent behavior, for at oral argument before the *en banc* court the Government attorney conceded that a "responsible person" within the Department of Justice, indeed, was aware that the Petite Policy was being violated through its prosecution of defendants, but nevertheless, out of his fear that the state convictions would be reversed on appeal, instructed the trial attorney to proceed with the case; only after a Florida appellate court affirmed the state convictions [6] and after defendants raised the Petite Policy on appeal did the Government move for dismissal. The Government attorney argued, however, that this knowledge did not constitute bad faith on the part of the "responsible person" or on that of the Department of Justice. Rather, he contended that the position of the Department of Justice is *not* that the prosecution should never have been brought, but that once the state convictions had been affirmed the Government could properly have moved to dismiss the federal indictment against defendants. Indeed, he states that had permission to prosecute been sought from an Assistant Attorney General by the "responsible person" in charge of the case, it might well have been given and, hence, there would have been no violation of the Petite Policy.[7] Had that event occurred, the Government attorney states, it would have then been absolutely proper, once the Flori-

da appellate court affirmed the state conviction on appeal, for the Department of Justice to rescind, retroactively, its authorization of the prosecution and now, finding the Petite Policy to have been violated by a federal trial for an offense for which a state prosecution was made, to seek a dismissal based on this violation of the policy and the interest against duplicitous prosecutions that it seeks to promote. In essence, the Government's position is this: it can bring—nay, it can insist on—a prosecution that results in two trials and fourteen days of court time; it can bring this prosecution, despite the suggestion of the federal district court judge that it simply accept a proffered plea of guilty and allow the federal sentence to run concurrently with the state sentence for the same offense. Then, once this state conviction has been affirmed, it can discover with great alarm and apparent innocence that it has violated its own internal policy when it brought the prosecution. Of course, as in this case, the Department may have known that it was violating its policy when it prosecuted defendant; indeed, as in the Government attorney's hypothetical case, it may have even complied with the policy by obtaining the proper authorization to prosecute. Yet, once the state convictions have been affirmed, the Government may brazenly demand that the court simply dismiss the case as if the prosecution had never been brought. Frankly, we find appalling the Government's cavalier attitude toward its wasteful expenditure of judicial time and resources and toward the uneven application of its own policy. That the Government's conduct here constitutes bad faith is

**6.** The intermediate appellate court affirmed defendants' state conviction on April 30, 1974; *see Scaldeferri v. State*, 294 So.2d 407 (Fla. App.1974). The Government's motion to dismiss was filed on September 30, 1974. The Government attorney at oral argument before this *en banc* panel stated that while petitions for *certiorari* on the state convictions had not yet been denied by either the Florida Supreme Court of the United States Supreme Court when the Government made its motion, the Government felt that the state conviction was secure enough to justify its decision to move

for dismissal. Subsequently, the Supreme Court of Florida denied *certiorari* on October 3, 1974, *Pompeo v. State*, 303 So.2d. 21 (Fla.1974) and the U.S. Supreme Court denied *certiorari* on November 11, 1974, *Washington v. Florida*, 419 U.S. 993, 95 S.Ct. 304, 42 L.Ed.2d 266 (1974).

**7.** The Petite Policy provides that a federal prosecution, otherwise impermissible under the terms of the policy, may be authorized by the appropriate assistant Attorney General when the case involves a compelling federal interest.

clear to us. In this case, an unidentified, but responsible, official within the Department authorized a federal prosecution with full knowledge that such a prosecution was forbidden by the Petite Policy. For the Government to attempt to dismiss by arguing that no compelling reason now exists for a separate federal conviction, when the considerations that allegedly imply a lack of "compelling reason" were known as fully to the Government throughout both federal trials as now, does, for this court, constitute bad faith. Of course, the attorney for the Government argued that the same considerations did not exist during the trial in that the state convictions had not at that time been upheld on appeal. Yet, we find this position unacceptable. That is, the Petite Policy prohibits a federal prosecution after a state *prosecution* predicated on the same acts; in other words, Petite does not require that a state conviction must have resulted in order to invoke its strictures against a federal prosecution for the same acts. Thus, in merely prosecuting a defendant after a state prosecution, no matter whether a state conviction was obtained or upheld on appeal, the Government violates the terms of its policy from the outset. We cannot characterize this manipulative conduct as anything but bad faith.[8]

The Government's motion to dismiss having been made with unclean hands, Judge King's decision to deny that motion complies with the guidelines articulated in *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975). In *Cowan*, Judge Murrah explored the legislative history of Rule 48 and observed that the phrase "by leave of court" was added purposefully to give the court some discretion over the propriety of a prosecutorial motion to dismiss an indictment. Citing Judge Weinfeld's opinion in *United States v. Greater Blouse, Skirt &*

*Neckwear Con. Ass'n*, 228 F.Supp. 483 (S.D. N.Y.1964), Judge Murrah noted that even "indulging in the good faith of the prosecution . . . [his] recommendations [are] not conclusive upon the court, 'otherwise there would be no purpose to Rule 48(a), which requires leave of Court . . . [*Greater Blouse*, 228 F.Supp. 483, 486]'; that the rule contemplated public exposure of the reasons for the abandonment of an indictment . . . in order to prevent 'abuse' of the uncontrolled power of dismissal previously enjoyed by the prosecutors; that to gain the court's favorable discretion, the prosecution must convince the court that the reasons for the proposed dismissal are substantial." 524 F.2d at 511. Having determined that Congress intended to grant some discretion to the court over a Rule 48 motion to dismiss, Judge Murrah proceeded to outline the test to determine when that discretion could be exercised to deny the motion:

[I]t seems altogether proper to say that the phrase 'by leave of court' in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. . . . The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed *unless clearly contrary to manifest public interest.*

524 F.2d at 513 (emphasis added). Judge Murrah also indicated at several points in his opinion that an important part of the "public interest" test is the requirement

---

**8.** In addition to the fact that the Government acted purposefully and manipulatively throughout this case, its argument raises another problem for this court in that it contends that the Petite Policy was properly waived at the outset because Petite authorizes a federal prosecution when "compelling federal interests" are involved and because the state convictions had not yet been affirmed at the time of the trial,

such a compelling interest existed. According to this argument, when the state court later affirmed these convictions, the "compelling federal interest" justifying a federal prosecution vanished. Beside the implicit bad faith problems that this argument poses, our acceptance of it would require this court to rubberstamp the Government's vacillating interpretation of the term "compelling federal interest."

that the Government's motion to dismiss a pending prosecution be made in good faith. 524 F.2d at 513, 514. Here, the Government's attempt to manipulate the use of judicial time and resources through its capricious, inconsistent application of its own policy clearly constitutes bad faith and a violation of the public interest; our sanction of such conduct would invite future misconduct by the Government. Accordingly, we hold that Judge King did not abuse the discretion accorded to him under Rule 48(a) and we, therefore, affirm his denial of the motion.

 Finally, counsel for the defense, who joined with the Government in its appeal of Judge King's order, concentrated his argument on the unfairness to the defendants of the denial of the Rule 48 motion. Essentially, he argues that because at the outset the Government could have followed its own internal policy and elected not to prosecute defendants, its belated decision to comply with its Petite Policy now, after a conviction has been returned, renders Judge King's refusal to dismiss their indictment a great miscarriage of justice. Defendants' argument misconstrues the purpose of the "public interest test" and the considerations that underpin the delicate balance sought to be maintained in Rule 48(a) between judicial and executive powers. First, in our articulation of the public interest test in *Cowan*, we observed that "*the history of . . . Rule [48(a)] belies the notion that its only scope and purpose is the protection of the defendant. . . .* [Rather, it is] manifestly clear that the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the *public interest* in the fair administration of criminal justice." 524 F.2d at 512 (emphasis added). Here, for the reasons discussed above, we believe that a consideration of the public interest involved in this case compels us to affirm Judge King's order. In addition, we cannot understand how Judge King's refusal to dismiss unfairly harms defendants. They were, we assume, properly tried and convicted; certainly, they will have an opportunity on an appeal of the merits of the case to argue the existence of reversible error. The fact that the Justice Department is now reconsidering its original decision to prosecute does not vest defendants with any right to have an otherwise valid conviction dismissed. Indeed, we do not understand defendants to contend that they would have any right to question the propriety of their convictions if the Government had not moved for dismissal but instead had decided to remain consistent to its original decision to overlook its policy and prosecute defendants. Instead, defendants implicitly concede that they were at the mercy of the Government as to whether a federal prosecution should be brought. In essence, then, the conflict in this case is between the executive and judicial branches as to each of their roles in a determination to dismiss under Rule 48(a). While a determination of such a motion obviously affects defendants, it is not a defendant's interest in avoiding a validly obtained conviction that we weigh in our examination of the propriety of Judge King's order. Rather, it is the delicate balance established in Rule 48(a) between executive and judicial powers over dismissal with which we are concerned here. That is, as we stated in *Cowan*, "the Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated." 524 F.2d at 513. That presumption is rebutted, however, when the prosecution, as here, acts in bad faith and contravenes the public interest through its motion to dismiss. At that point, under the discretion yielded to it by 48(a) to "check [an] abuse of Executive prerogative," 524 F.2d at 513, the court can and must deny the motion to dismiss.

We affirm Judge King's order denying dismissal.

TJOFLAT, Circuit Judge (concurring):

The panel opinion presented a scenario of events which I concluded was not supported by the record; consequently, I dissented from what I considered to be unwarranted appellate factfinding for the purposes of

establishing bad faith on the part of the government. Subsequently, during oral argument before the court en banc, government counsel conceded, as the court's en banc opinion sets forth, that the facts surmised by the panel majority were indeed correct. It now having been established that there was prosecutorial bad faith in this case in the form of deliberate government manipulation of the federal judicial system, I concur in the opinion of the en banc court.

JAMES C. HILL, Circuit Judge, with whom GEWIN, GOLDBERG, GODBOLD and RONEY, Circuit Judges, join (dissenting):

The majority in this case insists upon giving to the prosecution that which it improperly sought as a means of disciplining it for having improperly sought it. Inasmuch as I believe this to be error, and to nourish rather than discourage the mischief sought to be corrected, I dissent.

As noted by the majority opinion, none of the participants who appeared before District Judge King performed in such a manner as to entitle them to the sympathy of a law judge or chancellor. Defendants Washington and Rinaldi stand convicted of a federal crime, subject to their right of appeal which presumably will now be given full consideration. They have no standing to complain that, based upon the same facts, they also stand convicted of a violation of the laws of the State of Florida. See Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); Bartkus v. Illinois, 359 U.S. 121, 77 S.Ct. 150, 1 L.Ed.2d 116 (1959).

Counsel for the government, obstinately and in spite of careful inquiry by the district court, persisted in a prosecution contrary to the "Petite Policy" of the Department of Justice. It was incumbent upon government counsel, independent of any inquiry by the trial judge, to acquaint himself with the status of the prosecution and move for its dismissal if contrary to government policy. It became an even heavier responsibility when the alert trial judge made pre-cise and insistent inquiry into that very subject. Yet, blandly reassuring the court that he knew of what he spoke, government counsel stated to the Court that the Department of Justice had deliberately consulted its policy and was yet determined to proceed. The majority of a panel of this court gleaned from its careful review of the entire record that this conduct was in bad faith or, at the very least, amounted to gross negligence. Finally, on oral argument before the en banc court, counsel for the government commendably acknowledged that this determination by the panel was correct, even though government counsel had theretofore insisted to the contrary before Judge King and before a panel of this court! The Department of Justice and its attorneys, who owe a higher duty as officers of the court than displayed in this record, make no valid claim to a sympathetic audience before us.

I submit, however, that the ever present participant in these proceedings deserving of our most attentive and sympathetic consideration is the Constitution of the United States and the separation of powers that it mandates. It is only the result which the majority reaches in appraising "the delicate balance established in Rule 48(a) between executive and judicial powers" [1] which compels me to dissent.

I submit that we must first seek to put all of these rather unpleasant facts into proper perspective. The bad faith evidenced by government counsel has been permitted by the majority to flow over into a vessel which ought not to be contaminated by it. The majority attributes the bad faith of government counsel in *persisting with the prosecution* to the ultimate action of government counsel in moving for the *dismissal of the indictment.* It seems to me that this bad faith is misapplied. I submit that, insofar as here pertinent, the first time that government counsel acted in good faith was when the government moved that the indictment be dismissed. That is, in what has been determined and, indeed, con-

1. *Ante* at 209.

fessed to have been bad faith, the government persisted in a prosecution and obtained, as a result of that bad faith, convictions. The majority holds today that, in order not to "invite future misconduct by the Government,"[2] we insist that the government be rewarded with the very convictions that it obtained through bad faith prosecutions and, we deny government counsel the right at long last to recant and in good faith dismiss the indictment. There must be logic in this result or the majority would not have so held, but I must confess that it escapes me.

I wholeheartedly agree with the majority that we should not invite the type of misconduct on the part of government counsel as is evidenced by the record in this case. However, the prosecution was in bad faith, and the majority would deter this conduct by burdening the prosecutor with a conviction. Thus, let us suppose that a prosecutor in bad faith insists upon the introduction of a confession. The prosecutor knows or in the exercise of reasonable care should know that the confession was obtained in a patently unconstitutional manner. Nevertheless, in his overzealous desire to obtain a conviction, he adamantly and steadfastly adheres to his representation to the court as to the validity of the confession. Finally, after prolonged investigation and several evidentiary hearings, the prosecutor is forced to admit that his prior representations had no basis in fact. However, the district court concludes that in order to discourage the type of misconduct evidenced by the prosecution, he will order that the confession be admitted and refuse to allow the prosecution to withdraw it! I submit that the rationale of the majority sanctions this result.

I submit that we should deal with matters such as this so that, if available under the law, our decision will have a prophylac-

tic effect upon the improper conduct. While it is difficult to see that such a result is available in this case, it seems to me, that whatever we do, we ought not encourage the improper conduct by rewarding it. Clearly that is done by the holding of the majority today.[3]

Admittedly, "leave of court" is required for the filing of a dismissal pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure. Those words have meaning, and they obviously mean that the executive does not have the unfettered authority, no matter what the considerations may be, to terminate a prosecution. Like the majority, I turn to *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), in my search for their meaning. Curiously, it appears to me that the opinion of Judge Murrah in that case, and particularly those portions quoted in the majority opinion, supports the view that I take of the issue. Throughout the opinion in *Cowan* Judge Murrah makes it clear that the only thing to be appraised by the court in passing upon a motion to file a dismissal is the motivation of the Executive *in moving to dismiss*. He makes it clear that the Executive's decision to terminate a prosecution shall be judged only by the public interest involved in the termination, not whether the public interest has theretofore been served by the Executive in its exercise of its original unfettered decision to initiate the prosecution.

The majority opinion seems to agree. Judge Morgan for the majority observes that "Judge Murrah also indicated at several points in his opinion that an important part of the 'public interest' test is the requirement that the Government's *motion to dismiss* a pending prosecution be made in good faith."[4] Then, the majority abandons any effort to determine from the record whether the motion to dismiss the prosecution was made in bad faith or contrary to

**2.** *Ante* at 209.

**3.** Perhaps the most effective prophylactic can be applied by a trial judge upon whom the imposition in bad faith has been made by attorneys who are supposed to be officers of the court—no matter their employer. I should not

want to say or do anything in this case which would limit the options available to a district court in order to deal with this phase of the matter.

**4.** *Ante* at 208.

the public interest, but instead substitutes for that inquiry its conclusion that, theretofore, government counsel had acted in exceedingly bad faith in continuing the prosecution.

As a first guideline to the meaning of the words "by leave of court" in Rule 48(a), I would suggest that the Court must confine its inquiry solely to the underlying motives *for the motion to dismiss*. The Court must not use the discretion thus granted as a device to upbraid the Executive's counsel for other conduct in connection with the handling of the case.

A second rule to guide us toward the meaning of "by leave of court" is found in the observation of Judge Murrah in *Cowan*.

> The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. 524 F.2d at 513

Upon that authority, I suggest that it is to be presumed that the Executive properly discharges the constitutional power of that branch by moving to terminate a prosecution, and only a clear and convincing showing that a motion to dismiss is motivated by considerations clearly contrary to the public interest can justify withholding leave.

Again, Judge Murrah's recounting of the actions of the trial court in *Cowan* lead me, inevitably, to a third rule for our guidance. In the *Cowan* case, it appeared that the Executive's motive for dismissal was a plea negotiation that had been entered into between prosecutor and defendant. It was the conclusion of the court, as stated by Judge Murrah, that such a motivation could not be said to have been clearly contrary to the public interest.[5] However, as noted in the *Cowan* decision, the trial judge in that case had himself undertaken to evaluate the conclusions reached by the Executive. The district judge was "unable to perceive how the best interest of justice could be served by dismissing" the indictment. Thus, the trial judge had substituted his judgment for that of the Executive. The Executive, while being motivated by considerations not contrary to the public interest, had reached a decision contrary to the decision that would have been reached by the judge had he been the prosecutor. The *Cowan* opinion disapproved of that prosecutorial decision-making by the court.

Therefore, I suggest as our third rule that, when it appears that the Executive's determination to dismiss is motivated by considerations not clearly contrary to the public interest, the Court may not evaluate the wisdom of the Executive resolution of the matter and substitute its judgment for that of the prosecutor.

In sum, I believe that once the underlying motives of the prosecutor in moving to dismiss have been determined, the responsibility of the judiciary ends. Furthermore, if an inquiry as to motivation is not made, a presumption exists that the Executive has properly carried out its function. Motivation clearly not in the public interest can be illustrated, but such illustrations are not suggested as exhaustive. It has frequently been observed that if the prosecutor is motivated by a desire to harass the defendant, leave should be withheld.[6] I would suggest that if it should appear that the prosecutor

---

**5.** Judge Murrah stated:
> Nor was it clearly contrary to the public interest for the government to accept in these plea agreements a reduction in the maximum possible sentence of Cowan and Jacobsen, when, as stated in the government's motion, it served to further an investigation by an especially created and wholly autonomous arm of the Executive. 524 F.2d at 514.

**6.** *See United States v. Cox,* 342 F.2d 167 (5th Cir. 1965). In fact, Judge Brown noted in his concurring opinion that the "trial Court's range of action [under Rule 48(a)] is confined to the protection of the rights of the defendant," *Id.* at 182, and he pointed out that the *en banc* court "seems to be in virtual agreement that this rule is for the protection of the defendant alone." *Id.* at 183, n. 6. Of course, he went on to observe that the *Cox* opinion was not presently limiting the discretion of the trial court to only this consideration.

is motivated to dismiss because he has accepted a bribe or because he desires to attend a social event instead of attend upon the court in the trial of the case or because he personally dislikes the victim of the crime, the court should withhold leave.

If what I have suggested be the proper considerations for a court in determining whether to grant leave to file a dismissal, then, clearly, the withholding of leave in this case was not justified. The motive of the prosecutor *in moving for dismissal* was based upon the Petite Policy which is not contrary to the public interest. The prosecutor may have acted in the conduct of the entire litigation in a manner not consistent with the public interest, but his motion to dismiss should not be tainted with that prior activity. Whether the trial judge would have decided to discontinue the prosecution because the defendants were being dealt with by the state courts ought not to be controlling. The Executive is empowered under our Constitution to make that decision.

I would reverse the trial court; remand the case for the entry of an appropriate order granting the government's motion to dismiss; and in that fashion deal with the only good faith step taken by the government insofar as this particular appeal reveals.

JOHN R. BROWN, Chief Judge (concurring in the dissent).

I join in Judge Hill's dissenting opinion even though it is based to a large extent on *Cowan*—an opinion in which I joined. As long as *Cowan* stands, I am bound by it. But time has convinced me that *Cowan's* reading of Rule 48(a) to inject the trial court into the Executive's decision to dismiss a pending criminal case is wrong. My solo forecast in *United States v. Cox*, 5 Cir. (En Banc), 1965, 342 F.2d 167 (Brown, J. concurring at 182) now seems truer than ever that Rule 48(a) is "confined to the protection of the rights of the defendant". It does not loose the Judge to weigh what the so-called public interest is, or whether it is satisfied.

Confession being good for the soul, I now relent my joining in that part of *Cowan* which is otherwise a great opinion by a great Judge and probably one of his last major Judicial contributions.