**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bruce THOMPSON, Defendant-Appellant.**

**No. 76–1883.**

United States Court of Appeals,
Tenth Circuit.

June 15, 1978.

John E. Green, First Asst. U. S. Atty., Oklahoma City, Okl. (Larry D. Patton, U. S. Atty., Oklahoma City, Okl., with him on brief), for plaintiff-appellee.

James W. Lawson, of Oteri & Weinberg, Boston, Mass., for defendant-appellant.

Before SETH, Chief Judge, and LEWIS, HOLLOWAY, McWILLIAMS, BARRETT, DOYLE, McKAY and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a judgment of conviction and sentence in the United States District Court for the Western District of Oklahoma. On April 29, 1976, the district court denied the defendant-appellant's motion to dismiss the indictment which had been returned against him on March 3, 1976. Following this denial of his motion to dismiss, defendant-appellant entered a plea of guilty and was thereafter sentenced on July 16, 1976 to a term of three years with a special parole term.

The indictment in the U.S. court case charged conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1). Following the return of the indictment, the mentioned motion to dismiss was filed. This motion asserted that the defendant's

rights had been violated; that the action of the government was contrary to the Fifth Amendment to the Constitution of the United States, and, particularly, against twice being placed in jeopardy for the same offense.

Previous to the above described proceedings (on October 17, 1975), defendant was charged by information in the state courts of Arkansas with possession of a controlled substance with intent to deliver, contrary to the applicable Arkansas statute. He pleaded guilty to this and was sentenced to one year in prison and a fine of $15,000.

It is agreed that both the state prosecution and the federal court prosecution were based on the same factual transaction. The overt act of the defendant Thompson in the federal conspiracy consisted of his having received approximately 500 pounds of marijuana. The Arkansas charge was predicated on the same marijuana. The described 500 pounds received by Thompson is said to be part of a much larger transaction in Oklahoma, one which included several tons of marijuana.

In this court the defendant for the first time cites and relies on a Department of Justice policy which provides that following a state prosecution there should be no federal prosecution for the same transaction in the absence of compelling federal interests. This is the so-called *Petite* policy. It is published in a 1972 Manual for the guidance of United States attorneys and provides as follows:

> No Federal case should be tried when there has been a state prosecution for substantially the same act or acts without a recommendation having been made to the Assistant Attorney General demonstrating compelling Federal interests for such prosecution.
>
> No such recommendation may be approved by the Assistant Attorney General without having it first brought to the attention of the Attorney General.[1]

1. The Supreme Court's recent opinion in *Rinaldi v. United States,* 434 U.S. 22, 28 29, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977), contains a statement of purpose of the *Petite* policy:

Since appellant contends that his conviction violates the *Petite* policy and questions the validity of the conviction, we must examine the legal nature, scope and significance of the policy in relation to the federal conviction.

### I.

Thompson's motion for dismissal of the federal indictment in the district court was on a constitutional ground. He said that the prosecution in the federal court resulted in his being placed twice in jeopardy contrary to the Fifth Amendment, Constitution of the United States. Thompson did not assert, as a defense, that the *Petite* policy was being violated. This issue is raised for the first time in this court. The constitutional question which he raised below is not seriously asserted here. Defendant does claim that the tardy approval of the prosecution by the Attorney General deprived him of life, liberty and property without due process of law.

As we view it, then, the question reduces to whether the conviction resulting from the defendant's plea of guilty in the federal court is affected by the failure on the part of the Attorney General to give an approval prior to the time that the proceedings took place in federal court. Another question is whether the defendant can take advantage of the *Petite* policy in the face of the government's having consented, through Attorney General Levi, to pursuing the proceedings in federal court.

To accept the defendant's analysis of the *Petite* policy would require that we view the *Petite* policy as conferring a right which is available to the defendant with or without approval of the Attorney General. We disagree with this argument.

> In response to the Court's continuing sensitivity to the fairness implications of the multiple prosecution power, the Justice Department adopted the policy of refusing to bring a federal prosecution following a state prosecution except when necessary to advance compelling interests of federal law enforcement. The *Petite* policy was designed to limit the exercise of the power to bring successive prosecutions for the same offense to situations comporting with the rationale for the existence of that power. Although not

### II.

As early as 1847 in *Fox v. Ohio,* 5 Howard 410, 46 U.S. 410, 12 L.Ed. 213, the Supreme Court considered the propriety of proceedings under both federal and state law. Ohio had enacted a statute which prohibited the counterfeiting of coins. The main argument was that the state lacked authority to enact such prohibitions; that the United States had exclusive power here. The Court held, however, that the state did have this power and that a conviction under the state statute was not at odds with the Constitution of the United States. The opinion stated in passing that where an offender has been convicted under the state law and the penalty has been imposed, he should not, as a matter of fairness, be subjected to punishment at the hands of the federal government for the same offense.

The *Fox* discussion was quoted by Chief Justice Taft in *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922). *Lanza* had to do with state and federal authority to enact prohibition statutes. The *Lanza* opinion recognized that it was valid for both the federal and the state governments to exercise jurisdiction. The trial court in that case had ruled that the United States was excluded from jurisdiction to proceed against the defendant after the state court had exhausted its jurisdiction. The holding was that in the absence of special provision by Congress, the conviction in the state court under state law did not bar prosecution in the court of the United States under the federal law for the same acts. Although the court recognized that concurrent jurisdiction was valid, at the same time it recognized that the one

> constitutionally mandated, this executive policy serves to protect interests which, but for the "dual sovereignty" principle inherent in our federal system, would be embraced by the Double Jeopardy Clause. In light of the parallel purposes of the Government's *Petite* policy and the fundamental constitutional guaranty against double jeopardy, the federal courts should be receptive, not circumspect, when the Government seeks leave to implement that policy.

first exercising jurisdiction did not exclude the other. It was also recognized that it was frequently desirable to impose sentence in but one court rather than both.

The *Petite* policy gets its name from the Supreme Court decision in *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). There were two *federal* prosecutions in that case rather than a state and a federal. The first of these was in the Eastern District of Pennsylvania, where Petite was indicted and tried for making false statements to a United States agency and also for suborning perjury before the same agency. The defendant entered a plea of nolo contendere to the conspiracy charge and the government dismissed the suborning perjury indictment. After being sentenced on the nolo contendere, he was indicted in the United States District Court for Maryland for suborning the perjury of two witnesses at the same hearing. He sought dismissal of the indictment returned to the United States District Court for the District of Maryland, claiming that this prosecution was barred by double jeopardy. The motion was denied and the conviction was affirmed by the Court of Appeals for the Fourth Circuit. 262 F.2d 788.

The Supreme Court granted certiorari. In the Supreme Court, the government through the Attorney General filed a motion to vacate the judgment which had been entered in the District of Maryland. It did so on the ground that it had a general policy that several offenses arising out of a single transaction should be alleged and tried together and should not form a basis for a multiple prosecution; that this was a policy dictated by fairness to the defendant and efficient and orderly law enforcement. As a result of the government's motion, the Supreme Court remanded the cause to the Court of Appeals with directions to that court to vacate its judgment and to direct the district court to vacate its judgment and to dismiss the indictment.

The posture of the *Petite* case was somewhat different because it posed the question which the Court would have been required to consider had it determined the cause on its merits. That was whether the double jeopardy prohibition of the Fifth Amendment applied to the two facets of the transaction before it. The Court was careful to state that it was not intimating in any way its opinion on the question of double jeopardy which had been advanced in the petition for certiorari.

In the earlier case of *Abbate et al. v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), the defendant was indicted in Illinois state court for violating an Illinois statute prohibiting conspiracy to injure or destroy property of another. Following conviction and sentence in that case, he was indicted for the same conspiracy in federal district court. He was also convicted and sentenced in the latter court. The Supreme Court held that the double prosecution, first, in the state court, followed by the prosecution and conviction in the federal court, did not violate the double jeopardy prohibition of the Fifth Amendment since the convictions resulted from the separate actions of distinct sovereigns. The Court referred to *Fox v. Ohio,* 5 Howard 410, 46 U.S. 410, 12 L.Ed. 213, which had reasoned that the Ohio prosecution there would not render the federal government powerless to enforce its laws on the same subject. The Court also cited, among other authorities, *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922), where the Court had also mentioned that the prior state conviction did not bar a federal prosecution in two distinct sovereignties, a state and federal government, both of which could exercise jurisdiction.

### III.

In the latest significant decision, *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977), decided by the Supreme Court November 7, 1977, the defendant had participated in a plot to rob safety deposit boxes of the Doral Beach Hotel in Miami Beach, Florida. This was prohibited by both state and federal law. The defendant had been tried, convicted and sentenced by both the State of Florida and the United States. He claimed in the Supreme Court

that the *Petite* policy was violated in that the federal conviction was obtained contrary to the *Petite* policy. The Solicitor General joined in his motion to vacate the judgment and to remand the case to the district court with instructions to dismiss. The Court, based on its own independent evaluation of the case, concluded that such summary disposition was proper.

The defendant in *Rinaldi* was first convicted in the state court. There was a subsequent federal trial which ended in a mistrial. Thereafter, the district court questioned government counsel as to the need of another trial in view of the state conviction. Government counsel responded that he had been instructed by his superiors in the Department of Justice to pursue the federal prosecution vigorously because of their concern that the state convictions might be reversed on appeal. Defendant was convicted in a second jury trial and was sentenced.

On appeal it was argued that the conviction had been obtained in violation of the *Petite* doctrine. The government acknowledged that the *Petite* policy had been violated and moved the Court of Appeals to remand the case to the district court for the purpose of dismissal of the indictment. The Court of Appeals granted the motion. However, when they got back to the district court and the motion to dismiss was made, the district court refused to dismiss, saying that it was not made until after the trial had been completed and, secondly, that the prosecutor had acted in bad faith by advising the court that he had been properly instructed to maintain the prosecution, whereas he had not been so instructed. The government then joined the defendant in appealing this denial by the district court. A divided panel of the Fifth Circuit affirmed. The majority of the court said that the government's unclean hands gave

the district court adequate reason to deny relief and that the defendant had no right to take advantage of the violations by the federal government of its own procedures. The Supreme Court reversed. It upheld the government's request that the federal prosecution be terminated, concluding that there was no evidence of bad faith in seeking such dismissal of the indictment. The fact that it might have been in bad faith in electing to pursue the prosecution did not require denial of its motion to dismiss at a later time.

The problem for appellant in our case is, as we have said previously, that the government has not sought at any stage the dismissal of the indictment against Thompson. On the contrary, the government, through the Attorney General's office in Washington, has appeared before this court and given its assurance that its position is that the conviction in this case should stand; that the equitable and fairness factors of the *Petite* policy are not here present. We have searched the cases in an effort to find one in which the *Petite* policy has been applied in favor of a defendant over the objections of the government and we have found no such cases.[2] We must conclude, therefore, that in these circumstances it is for the government, through the office of the Attorney General, to decide whether the case (first prosecuted in state court) is a proper one for further prosecution in federal court. The fact that the approval of the federal proceeding here was somewhat tardy as a result of the Assistant U.S. Attorney's not having been aware that there was a *Petite* policy does not change the result. If the government had made the decision to pursue the prosecution before the return of the indictment, there could be no shadow of a doubt as to the validity or propriety of the proceedings in the federal court. The fact, then, that

**2.** The decisions are to the contrary. Those of the Supreme Court always speak of the policy being activated upon the government's motion. *See Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960); *Marakar v. United States,* 370 U.S. 723, 82 S.Ct. 1573, 8 L.Ed.2d 803 (1962); *Redmond v. United States,* 384 U.S. 264, 86 S.Ct. 1415, 16 L.Ed.2d 521 (1966); *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). The opinion in *Rinaldi* says "The defendant, therefore, should receive the benefit of the policy whenever its application is urged by the Government." 98 S.Ct. at 86.

the consent of the Attorney General was given late, since it does not affect the accused it cannot affect the result. The important factor is that a firm decision of the Attorney General has been made.

■ We also consider ill-founded the notion that a departmental policy such as the present one is capable of giving rise to an enforceable right in favor of the defendant. The decisions hold that a press release expressing a policy statement and not promulgated as a regulation of the Department of Justice and published in the Federal Register is simply a "housekeeping provision of the Department." *Sullivan v. United States,* 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210 (1954); *United States v. Hutul,* 416 F.2d 607, 626 (7th Cir. 1969), *cert. denied,* 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (the defendant had asserted that the prosecution was void as the government acted outside its authority). The Seventh Circuit reiterated that a letter, press release or similar statement by the Attorney General is merely a housekeeping provision of the Department. Our view is that it is at most a guide for the use of the Attorney General and the United States Attorneys in the field. Therefore, we must disagree with the defendant's contention that it was capable of conferring a right upon him.

Accordingly, the judgment of the district court is affirmed.

LEWIS, HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges, concur in the majority opinion.

SETH, Chief Judge, and McKAY and LOGAN, Circuit Judges, join in the dissenting opinion.

SETH, Chief Judge, dissenting:

I must respectfully dissent from the majority opinion, and in so doing, it is necessary to refer again to the sequence of events. The defendant, Bruce Thompson, entered a plea of guilty to an information filed by the State of Arkansas on October 17, 1975, charging in one count the possession of a controlled substance with intent to deliver. This guilty plea was made on January 5, 1976. He was sentenced by the state court to one year's imprisonment and a fine of $15,000.00.

This defendant Thompson was then charged in a federal indictment on March 3, 1976, of conspiracy to distribute marijuana contrary to 21 U.S.C. § 846. He entered a plea of not guilty, and filed several motions to dismiss on March 29, 1976, including one based on a violation of the Fifth Amendment arising from the dual prosecution. The due process aspect of the dual prosecution was argued. In his motion to dismiss at point 14 he stated that a directive of the Attorney General had been violated, and in the supporting memorandum the *Petite* case is cited. This with the double jeopardy argument, was sufficient to raise the issue in the trial court.

The Government in its brief states of the state and federal convictions: "The convictions for both crimes involved the same factual situation." The charges by the state and the federal governments were based on defendant's possession of about 500 pounds of marijuana in Arkansas on October 15, 1975. We thus do not have a problem as to whether the prosecutions arose from the same incident. The record further shows that the prosecutions arose out of a cooperative effort of state and federal law enforcement officers, and concerned marijuana flown into the United States by federal agents. These agents then followed the distribution with state agents helping. Thompson was one of the minor figures who was down the distribution chain in Arkansas.

It is apparent that the federal prosecution of Thompson was contrary to the *Petite* policy. The issue thus comes down to the validity of the federal prosecution, as a second prosecution of Thompson, in the face of the Justice Department policy violation. Also the effectiveness of the after-the-fact authorization for dual prosecution must be examined.

We have held on a number of occasions that the Fifth Amendment does not of itself bar dual prosecutions. *See United*

*States v. Smaldone*, 485 F.2d 1333 (10th Cir.), and *United States v. Villano*, 529 F.2d 1046 (10th Cir.), citing *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684, and *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729. *See also United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314.

The case before us is however concerned only with the consequences arising from the *Petite* policy. This "policy" is much more than a departmental policy in the usual sense. The origin of the policy was in the difficulties and division the Supreme Court encountered in the cases wherein the double jeopardy rule for state and federal prosecutions was established. The dual sovereignty concept as a logical but somewhat artificial explanation was thus announced by the Court after a difference of opinion. What is now the *Petite* policy was then established to meet the objections and fears of the minority on the Court. As the opinion in *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207, states in part:

"In this respect, the policy represents the Government's response to repeated expressions of concern by Members of this Court."

The Court then quoted from *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314. The Court then said:

"What has come to be known as the *Petite* policy was formulated by the Justice Department in direct response to this Court's opinions in *Bartkus v. Illinois*, 359 U.S. 121, [79 S.Ct. 676, 3 L.Ed.2d 684] . . . ."

The origin of the policy is a significant factor in evaluating its importance, its purpose, and how it should be implemented. Again, it is significantly more than a departmental policy in view of its origin and its "parallel purpose" to the guaranty against double jeopardy. It was adopted "in response" to the Court's opinion in *Bartkus*, and further the Court in *Rinaldi* said:

"In response to the Court's continuing sensitivity to the fairness implications of the multiple prosecution power, the Justice Department adopted the policy of refusing to bring a federal prosecution following a state prosecution except when necessary to advance compelling interests of federal law enforcement. The *Petite* policy was designed to limit the exercise of the power to bring successive prosecutions for the same offense to situations comporting with the rationale for the existence of that power. Although not constitutionally mandated, this executive policy serves to protect interests which, but for the 'dual sovereignty' principle inherent in our federal system, would be embraced by the Double Jeopardy Clause. In light of the parallel purposes of the Government's *Petite* policy and the fundamental constitutional guaranty against double jeopardy, the federal courts should be receptive, not circumspect, when the Government seeks leave to implement that policy."

The "parallel purpose" reference above is most significant in considering whether the defendant Thompson can assert a violation of the policy on this appeal, much in the same way the Department could.

The Court has said in strong terms, which sound like double jeopardy words, that the policy is to protect the individual. Again in *Rinaldi* it said:

"The overriding purpose of the *Petite* policy is to protect the individual from any unfairness associated with needless multiple prosecutions. The defendant, therefore, should receive the benefit of the policy whenever its application is urged by the Government."

The statement is, of course, concluded by the reference to an application "urged by the Government," but that was the way the issue arose in *Rinaldi*, since the trial court had refused to dismiss for a violation of the policy when moved to do so by the Government.

The Supreme Court has, of course, in several cases granted the Government's motion to remand for dismissal when the prosecution has realized that the *Petite* policy has been violated. *See Watts v. United States*, 422 U.S. 1032, 95 S.Ct. 2648, 45 L.Ed.2d 688; *Ackerson v. United States*,

419 U.S. 1099, 95 S.Ct. 769, 42 L.Ed.2d 796, and *Hayles v. United States*, 419 U.S. 892, 95 S.Ct. 168, 42 L.Ed.2d 136. These are instances where the Government has made the request for a remand.

In view of the important and fundamental nature of the *Petite* policy, as described in *Rinaldi*, and considering its origin, I would hold that the matter was properly raised in the trial court, and since the Government has given no consideration whatever in advance of trial to the policy, the defendant should receive the benefit of it although the Government may not have urged its application.

When the reasons for the policy are couched in double jeopardy terms, it is apparent that a preprosecution determination must be made in order for the purpose to be carried out. When the department has recognized that a mistake has been made, the Supreme Court is quick to approve corrective action. Here Thompson adequately raised the issue before trial, and a similar correction should have been made. There are many cases holding that an agency must follow its own rules, regulations, statements of policy, press releases, and instructions to its employees.

It would not seem necessary to discuss at length the cases which require an agency to adhere to the policy and regulations its promulgates. The cases are especially clear in the Internal Revenue Service rule problems. *United States v. Heffner*, 420 F.2d 809 (4th Cir.), contains a clear and direct statement on the reasons why policy statements should be enforced and gives many examples. *See also United States v. Leahey*, 434 F.2d 7 (1st Cir.). The court there applied *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, a deportation case where established procedures were not followed. *See also Yellin v. United States*, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778; *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012, and *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403. The *Service v. Dulles* case is especially pertinent because it concerned a policy not required or authorized by statute

to be promulgated. The policy in *United States v. Heffner*, was of a similar nature. In *Smith v. Resor*, 406 F.2d 141 (2d Cir.), the court applied a "Weekly Bulletin," and in *Sangamon Valley Television Corp. v. United States*, 106 U.S.App.D.C. 30, 269 F.2d 221, the court applied an order not formally promulgated. *Yellin v. United States*, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778, concerned the rules of a Congressional Committee. *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012, concerned orders of the Department of Interior. *See also United States ex rel. Brooks v. Clifford*, 409 F.2d 700 (4th Cir.).

From the variety of situations in which the courts have held that agencies must follow their statements of policy and directives, it is apparent that if the statements are applicable, are made known, and are of guidance for the execution of the agency policies, it makes no difference what they are called nor how they are adopted. The public has a right to rely on them as against some inconsistent case by case subjective determination by a public official. The cases further demonstrate that it makes no difference whether the agency has express statutory authority to adopt the policy. The agency has to run its business, it has to function. This is done by regulations and policy statements, and it makes no difference whether Congress has expressly directed them or not if they are within the general objectives of the agency, and especially if they represent some self-restraint on its authority or discretion as in the case before us.

The *Petite* policy against dual prosecutions contains an exception to permit dual prosecution when necessary to advance "compelling interests of law enforcement." The basic Department policy was apparently announced or reiterated in June 1975; it referred to *Abbate v. United States*, and the power to have dual prosecutions. It then stated in part: "However, no federal case should be tried when there has already been a state prosecution for substantially the same act or acts without the United States Attorney first submitting a recom-

mendation . . .." The statement of policy further said that no recommendation should be approved until it had been brought to the attention of the Attorney General. *See* footnotes in *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207, for a further description of the policy and its origin. That note refers also to "prior authorization."

The brief of the Government in the case before us shows that on October 5, 1976, an Assistant United States Attorney General recommended to the Attorney General that authority be given for the dual prosecution of defendant Thompson. This recommendation was approved on December 17, 1976. The approval thus came some nine months after the federal indictment of Thompson, and some five months after he was sentenced in the federal court.

We will not consider the reasons expressed in the much belated recommendation for dual prosecution, but do observe that they apparently refer to other persons than this defendant. Also we notice that reference was made therein to the fact that the policy was not known to the Assistant United States Attorney handling this prosecution until the defendant raised the matter in the district court by his motion to dismiss. No decision or consideration of the policy by the Attorney General or United States Attorney was made in advance of trial. It is thus apparent that the after-the-fact approval was an effort to patch up an unfortunate situation wherein the defendant by that time was serving his sentence.

In any event, it would not seem to be a proper function of the Department of Justice or of the Solicitor to decide whether the state court sentence was severe enough. This was the presentation here. It is not a law enforcement—Executive Department area of authority. The second prosecution for the same offense, decided by such an official on a subjective basis, is not in accord with the federal system, and especially so in a setting where the prosecution arose from a law enforcement effort which was a cooperative one between state and federal officers. It is just the situation and the danger contemplated in *Bartkus v. United States*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684, *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314, and in *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729. It is so much a part of the decisions formulating the dual sovereignty concept for double jeopardy as a protection to the defendant that it must be available to the defendant Thompson. It is a double jeopardy protection in sheep's clothing.

Thus I would hold that the postconviction attempt to authorize the prosecution of defendant Thompson in the federal court came too late to be effective as he had been convicted and sentenced some nine months before. It was not a compliance with: "The prior authorization requirement in the *Petite* policy . . . .." The policy was thus violated, and the defendant, since it is to " . . . protect the individual from any unfairness associated with needless prosecutions . . . ," should receive the benefit of the policy whether he asks for it or the Government asks for it.