## UNITED STATES of America

v.

## Rocco FRUMENTO, et al.
### Rocco Frumento, Movant

Crim. No. 75–322.

United States District Court, E. D. Pennsylvania.

March 1, 1976.

**138**

Robert E. J. Curran, U. S. Atty., Alan M. Lieberman, Joseph M. Fioravanti, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

A. Martin Herring, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Before the Court are various pretrial motions filed by defendant Rocco Frumento in this multi-defendant criminal case. Frumento is charged in four counts of an eleven-count indictment with violating 18 U.S.C. § 1962(c), conspiring to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d), and with fraud and false statements in the making and subscribing of income tax returns for the calendar years 1971 and 1972. This Memorandum will deal with several of the motions to dismiss the indictment filed by Frumento. The grounds asserted are: (1) a lack of jurisdiction over the alleged crimes; (2) the Double Jeopardy Clause of the Fifth Amendment and the doctrine of collateral estoppel; (3) the Government's failure to comply with Department of Justice policy; (4) the improper selection process for the pool from which the grand jurors returning the indictment were chosen; (5) the inability of the grand jury, due to the action or inaction of the Government, to properly assess the credibility of witness Harold Sharp; and (6) prejudicial pre-indictment publicity resulting in grand jury bias. For the reasons stated below, we will deny the motions.

### Lack of Jurisdiction

The indictment charges that Frumento, in his position as Field Investigator Second Class for the Pennsylvania Department of Revenue's Bureau of Cigarette and Beverage Taxes ("Bureau"), solicited and accepted bribes as part of an alleged cigarette smuggling conspiracy. The Bureau is the arm of the Department of Revenue entrusted with fulfilling the Department's statutory duty to collect the tax imposed by law upon the sale of cigarettes in Pennsylvania. 72 P.S. § 203(n).

Frumento is charged with violating 18 U.S.C. § 1962(c) by reason of his alleged part in this scheme, and with conspiring to do so, in violation of 18 U.S.C. § 1962(d). Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Frumento does not dispute that the indictment charges sufficient acts of bribery to constitute a "pattern of racketeering activity" within the meaning of the statute. His first argument questions whether the Bureau, as a government agency, qualifies as an "enterprise"

embraced by the prohibitions of Section 1962(c). The Court's position on that issue has been fully and adequately set forth in our Opinion reported at 405 F.Supp. 23, 29–30 (E.D.Pa. 1975), dealing with the motions of co-defendant George Collitt. Our rejection of Frumento's argument is based on that discussion.

Frumento argues further that, even if the Bureau is a statutory "enterprise," the activities of the Bureau do not affect interstate or foreign commerce. We believe that this challenge to the jurisdictional reach of the statute is also without merit. The Government intends to prove at trial, and it is accepted as true for purposes of this motion, that all cigarettes marketed in Pennsylvania are imported from other states and that the Bureau is the sole governmental agency empowered to enforce the Commonwealth's laws respecting the importation of cigarettes. Frumento contends that once the cigarettes have been sold by the out-of-state manufacturer or dealer to the Pennsylvania distributor, the Bureau's enforcement of that distributor's subsequent obligation to make payment of the Pennsylvania cigarette tax before resale does not amount to engaging in or affecting interstate commerce. From the time the Pennsylvania tax is paid, the argument continues, the cigarettes may only be sold legally within Pennsylvania and, thus, the relevant journey of the taxed cigarettes is only intrastate. This argument too narrowly restricts the meaning of the concept "affect interstate commerce." It is obvious that the imposition of the Pennsylvania tax affects the resale price to any purchaser of the taxed cigarettes. It is also basic economic theory that the price of an item usually has a relationship to the unit sales volume of the item. By enforcing the Commonwealth's cigarette tax laws, the Bureau directly affects the price of legitimate cigarettes in Pennsylvania and, thus, the amount of legitimate cigarette sales in Pennsylvania. Since all cigarettes sold in Pennsylvania are originally imported from other states, any activity which influences the amount of cigarette sales in the Commonwealth clearly affects interstate commerce. The jurisdictional prerequisites of the crimes for which Frumento stands accused have been properly alleged.

### Double Jeopardy and Collateral Estoppel

Frumento contends that this federal prosecution is barred by the Double Jeopardy Clause of the Fifth Amendment to the Constitution. In June, 1972, Frumento was tried and acquitted in Philadelphia Municipal Court on charges of bribery, extortion and conspiracy to accept bribes and avoid payment of the Pennsylvania cigarette tax. The state indictment was based on the same alleged activity as the present federal indictment, which charges that Frumento violated 18 U.S.C. § 1962(c) by engaging in the conduct of the Bureau's affairs through a pattern of racketeering activity. In relevant part, "racketeering activity" is defined by the statute as "any act or threat involving . . . bribery, [or] extortion, . . . which is chargeable under State law and punishable by imprisonment for more than one year . . . ." 18 U.S.C. § 1961(1)(A). Proof of a "pattern of racketeering activity," which is an essential element of the charged offense, requires a showing of at least two separate instances of racketeering activity. 18 U.S.C. § 1961(5).[1]

1. We note that Frumento's double jeopardy argument only specifically attacks his indictment under 18 U.S.C. §§ 1962(c), (d). The tax counts, charging violations of 26 U.S.C. § 7206(1), are wholly separate offenses from those for which Frumento was tried in the state court. Practically speaking, however, if the Court accepted Frumento's argument that the collateral estoppel effect of the state court acquittal necessitates the dismissal of the "racketeering" counts of the federal indictment, the Court would also consider dismissal of the tax counts appropriate. This follows from the Government's admission that proof of the tax violations is dependent upon proof that the defendant accepted the bribes which are the subject matter of the "racketeering" counts. (*See* Memorandum of Law in Support

■ Frumento argues that the holding of *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), that successive state and federal prosecutions for the same acts are not barred by the Double Jeopardy Clause, is no longer valid. While the doctrine of dual sovereignty has been eroded somewhat by more recent Supreme Court decisions, such as *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), and *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), this Court believes that the *Abbate* rule has continuing vitality. *United States v. Johnson,* 516 F.2d 209, 212 (8th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85 (1975); *United States v. Fernandez,* 497 F.2d 730, 747 n.10 (9th Cir. 1974) (Hufstedler, J., concurring specially), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1423, 43 L.Ed.2d 670 (1975). In fact, Chief Justice Burger, joined by Justices White and Rehnquist, recently addressed the issue and stated specifically that they believe *Abbate* remains "good law." *Watts v. United States,* 422 U.S. 1032, 1038, 95 S.Ct. 2648, 2651, 45 L.Ed.2d 688, 690 (1975) (dissenting opinion).

■■ Our ruling that *Abbate v. United States, supra,* is controlling here leads directly to the rejection of the second prong of Frumento's argument. Frumento contends that since an essential element of the federal crimes for which he stands indicted is proof of violations of state law, for which a state court has already acquitted him, the doctrine of collateral estoppel bars this prosecution.

*See generally Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The doctrine of collateral estoppel prevents the relitigation of a once-determined issue of ultimate fact by the same parties in a subsequent action. *Ashe v. Swenson, supra* at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. The state and federal governments, as separate sovereigns, are not the same party. Therefore, *federal* prosecution for a violation of *federal* law, which happens to incorporate within its provisions *state* law for which there has already been a *state* prosecution, does not offend the established collateral estoppel rule of federal criminal law. *See United States v. Kerrigan,* 514 F.2d 35, 37 n.1 (9th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975); *United States v. Smaldone,* 485 F.2d 1333, 1343 (10th Cir. 1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974). The principle of *Ashe v. Swenson, supra,* does not apply in the separate sovereign context. *United States v. Fernandez, supra,* 497 F.2d at 747 n.10 (Hufstedler, J., concurring specially).

### Department of Justice Policy

■ The Department of Justice has an internal policy against "duplicating federal-state prosecutions." *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). It has recently been articulated as "the Department of Justice policy of not prosecuting individuals previously tried in a state court for offenses involving the same acts, unless there exist 'most compelling reasons,'

of Government's Response to Motion of Defendant, Andrew Millhouse, for Relief from Improper Joinder, at 1.) If the state acquittal on bribery and extortion charges was a determination of "ultimate fact," *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970), binding upon the federal government for purposes of the "racketeering" counts, it would equally preclude a federal prosecution for tax violations based upon participation in this alleged racketeering activity. For reasons stated in the body of this Memorandum, the Court does not believe that the doctrine of collateral estoppel is applicable in this case.

We also note, tangentially, that joinder of the individual tax counts against the co-defendants in this indictment was proper under Fed.R.Crim.P. 8(b). Joinder of separate income tax offenses against co-conspirators in an indictment which also charges them with the conspiracy is proper where the underlying crime generated the alleged income tax violations. *United States v. Beasley,* 519 F.2d 233, 238 (5th Cir. 1975); *United States v. Isaacs,* 493 F.2d 1124, 1159 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *United States v. Roselli,* 432 F.2d 879, 899 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971).

and then only after the specific approval of the appropriate Assistant Attorney General has been obtained." *Watts v. United States, supra,* 422 U.S. at 1033, 95 S.Ct. at 2649, 45 L.Ed.2d at 689 (dissenting opinion, quoting Solicitor General's brief for the United States). Frümento claims that this prosecution violates the above-stated policy.

The Government has presented to the Court a letter affidavit from Deputy Assistant Attorney General John C. Keeney, dated October 20, 1975, which states that in his position as Acting Assistant Attorney General, Criminal Division, he personally approved this prosecution on May 4, 1975, with full awareness of the previous state action. The requisite approval was, thus, received for this prosecution.

The only remaining question is whether there were "most compelling reasons" to bring this federal indictment. The flexibility and discretion inherent in this phrase makes the question of whether there has been compliance with the policy an inappropriate subject for judicial evaluation. *Watts v. United States, supra* at 1037, 95 S.Ct. at 2650, 45 L.Ed.2d at 690 (dissenting opinion). This is not a case such as *Watts,* where the Solicitor General confessed error on the grounds that prior approval for the prosecution had not been sought and "compelling reasons" did not exist for the federal prosecution. Proper approval from the Assistant Attorney General was obtained for this prosecution. The Court will not go further and review the merits of this internal prosecutorial decision.

### Grand Jury Selection

Frumento moves to dismiss the indictment on the ground that the grand jury was selected in violation of the requirements of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.,* and his Fifth Amendment right to be indicted only by a grand jury which constitutes a fair cross-section of the community from which it is drawn. Frumento argues that the exclusive use of voter registration lists to obtain the juror wheel [2] may result in the selection of a group of individuals not properly representative of the community as regards the characteristics of race, age or economic status.

■ We note preliminarily that Frumento's statutory challenge is barred by his failure to comply with the mandatory procedural prerequisites to such an attack on the selection process. *See* 28 U.S.C. § 1867(e). The motion before the Court contains no "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions" of the Act. 28 U.S.C. § 1867(d). *Compare Test v. United States,* 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975). The absence of such a sworn statement requires the denial of a motion to dismiss the indictment for non-compliance with the statutory jury selection procedures. *United States v. Mitchell,* 397 F.Supp. 166, 175 (D.D.C. 1974); *United States v. Stephens,* 315 F.Supp. 1008, 1009 (W.D.Okl. 1970).

■ The Fifth Amendment to the Constitution has been held to require that no group in the community be excluded unjustly from grand jury service and that a grand jury panel shall constitute a fair cross-section of the judicial district from which it is chosen. *United States v. Leonetti,* 291 F.Supp. 461, 473 & n.3 (S.D.N.Y.1968), *approved in United States v. Bennett,* 409 F.2d 888, 892–893 (2d Cir.), *cert. denied,* 396 U.S. 852, 90

---

**2.** The first paragraph of Section 3 of the Plan for the Random Selection of Grand and Petit Jurors of the United States District Court for the Eastern District of Pennsylvania, approved September 23, 1968, states:

> Voter Registration Lists represent a fair cross section of the community in the Eastern District of Pennsylvania. Accordingly, names of grand and petit jurors serving on or after the effective date [December 22, 1968] of this plan shall be selected at random from the Voter Registration Lists of the counties within this Federal District. The names of prospective jurors shall be selected from Voter Registration Lists as defined in 28 U.S.C., 1869(c).

S.Ct. 113, 24 L.Ed.2d 101 (1969); *International Longshoremen's & Warehousemen's Union v. Ackerman*, 82 F.Supp. 65, 122 (D.Hawaii 1948) (Biggs, J.), *rev'd on other grounds*, 187 F.2d 860 (9th Cir.), *cert. denied*, 342 U.S. 859, 72 S.Ct. 85, 96 L.Ed. 646 (1951). This Court need not decide the "difficult question" of whether failure to comply with the requirements set forth in 28 U.S.C. § 1867 for a statutory challenge to the grand jury selection procedures should also bar a constitutional challenge in the same action. *See Virgin Islands v. Navarro*, 513 F.2d 11, 18–19 & n.5 (3d Cir.), *cert. denied*, 422 U.S. 1045, 95 S.Ct. 2662, 45 L.Ed.2d 698 (1975). Assuming, *arguendo*, that the constitutional challenge may properly be made here, the Court believes that it is without merit.

■ In *United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), the defendants moved for a dismissal of the indictment on the ground that the grand jury was improperly selected. Their objection was based on the use of lists of voters (registered or actual) as the source of names for selection. The language of the court concerning its rejection of the defendants' constitutional challenge is sufficient answer to the motion here under consideration:

> Feasibility makes reliance on voter lists attractive. They contain a large if not precisely perfect sample of the qualified residents of an area, reflecting all the varying attitudes relevant to the grand jury function which such residents hold. Among persons qualified to vote, and absent discriminatory practices in administering the election system, not demonstrated here, the voter list is open as a matter of choice. The choice of the voter list as the source of names for jury selection is surely not invidious discrimination, except where the list itself reflects discriminatory practices.

> . . . [W]e are not prepared to say that the use of the voter list per se results in distortion of a perfect cross section sufficient to render an indict-

ment constitutionally invalid. 472 F.2d at 366.

*Accord, United States v. Lewis*, 472 F.2d 252 (3d Cir. 1973).

### Ability of Grand Jury to Properly Assess Credibility of Government Witness Harold Sharp

Frumento contends that, in light of the Government's alleged knowledge that the testimony of unindicted co-conspirator Harold Sharp at Frumento's state trial was inconsistent and disputed, the Government was under an obligation to administer a "lie detector" test to Sharp prior to presenting him to the federal grand jury. It is argued that this obligation arises out of the general duty of the prosecutor to act in good faith. Its purpose would be to better evaluate Sharp's credibility and assure that the Government was not knowingly presenting an untruthful witness to the grand jury. In addition, Frumento argues that the grand jury should have been informed by the Government that Sharp had been granted immunity from prosecution in exchange for his testimony.

■ Without addressing the merits of this motion, it must be denied as lacking any factual basis. The Government's response to this motion states that the grand jury was informed of the grant of immunity to Mr. Sharp and that a polygraph examination was administered to Sharp prior to his testifying before the grand jury. The Court accepts the Government's statement as a complete and satisfactory answer to Frumento's objections.

### Pre-Indictment Publicity

Frumento contends that his indictment is invalid due to bias on the part of the grand jury resulting from pre-indictment publicity. He requests that an evidentiary hearing be held at which each grand juror can be questioned individually concerning the alleged effect of prejudicial pre-indictment publicity.

■ It is not enough that a defendant alleges, or even demonstrates,

massive or prolonged pre-indictment publicity concerning his case. Such a showing only justifies further investigation by examination of the grand jurors at an evidentiary hearing. In the absence of specific evidence of actual prejudice among the grand jurors, of which the record here is completely devoid, there will be no relief granted. *United States v. Bally Manufacturing Corporation*, 345 F.Supp. 410, 420 (E.D.La. 1972). Any publicity concerning Frumento and his involvement in the activities alleged in this indictment was generated by his prosecution in state court over two and one-half years prior to the consideration of this matter by the federal grand jury. Frumento has not alleged, and the Court is not aware of, any publicity concerning him which appeared during, or immediately prior to, the presentation of the case to the federal grand jury. There is clearly no basis upon which to presume grand jury bias necessitating the dismissal of the indictment.

The request for an evidentiary hearing will be denied as frivolous. We will not authorize a blatant "fishing expedition" to establish evidence of prejudice where none is known, or reasonably expected, to exist. *Id.* at 421. Moreover, we reject as baseless any suggestion of prosecutorial misconduct in the handling of the grand jury.

An appropriate Order will be entered.