603 F.2d 53
 UNITED STATES of America, Appellee,
v.
Preston SELLERS, Appellant.
UNITED STATES of America, Appellee,
v.
Johnnie CARADINE, Appellant.
UNITED STATES of America, Appellee,
v.
Donald ALLEN, Appellant.
UNITED STATES of America, Appellee,
v.
William E. JEWETT, Appellant.
UNITED STATES of America, Appellee,
v.
Dennis Lavern ENGLISH, Appellant.
UNITED STATES of America, Appellee,
v.
William James MONROE, Appellant.
 Nos. 79-1107, 79-1112 to 79-1114, 79-1125 and 79-1126.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 11, 1979.
Decided Aug. 7, 1979.
Rehearing and Rehearing En Banc Denied Sept. 11, 1979.
 
 John D. Hudson, Carney, Hudson & Williams, Des Moines, Iowa, for appellant, Sellers.
 Mark W. Bennett, Des Moines, Iowa, for appellant, Jewett; R. Earl Barrett, Des Moines, Iowa, for appellant, Monroe; David C. Shinkle, Robert H. Laden, Frank A. Comito, Des Moines, Iowa, on the briefs.
 John O. Martin, Sp. Asst. U. S. Atty., Kansas City, Kan., for appellee; Roxanne Barton Conlin, U. S. Atty., and Amanda M. Dorr, Asst. U. S. Atty., Des Moines, Iowa, on the brief.
 Before GIBSON, Chief Judge, and ROSS and HENLEY, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 Defendants were tried jointly for conspiracy to distribute heroin in violation of 21 U.S.C. § 846. The jury returned a verdict of guilty as to each, and the district court[1] sentenced each defendant to four years imprisonment to be followed by a special three year parole term, 21 U.S.C. §§ 841(a)(1) and 841(b) (1)(A). On appeal defendants challenge the sufficiency of the evidence to sustain their convictions, various rulings by the district court before and during trial, and the legality of their sentences. We affirm.
 
 I.
 
 2
 Defendants first contend that the evidence was insufficient to establish the existence of a conspiracy to distribute heroin. We disagree. The record overwhelmingly establishes a long-term, successful and profitable heroin distribution scheme in Iowa headed by Clifford Hobbs.
 
 
 3
 George Childress, a heroin supplier based in Los Angeles, testified that for approximately three years beginning in 1975, he sold heroin to Clifford Hobbs for distribution in Cedar Rapids and Des Moines, Iowa. While Hobbs or persons he designated usually picked up the heroin from Childress in California, occasionally Childress sent the narcotics to Hobbs in Iowa. Deliveries occurred approximately three times per month, averaging six ounces per sale, for a price of $850 an ounce.
 
 
 4
 A number of "lieutenants" (who held intermediate positions below Hobbs in the distribution scheme) and street dealers (who ranked below lieutenants) testified to the structure of Hobbs' organization, including the substantial profits at each level and identified participants in the operation. Their testimony was corroborated by Drug Enforcement Administration agents and Iowa state police as well as by tape recordings between government informants and members of the conspiracy.
 
 
 5
 We also find the evidence sufficient to connect each of the defendants to the conspiracy.[2] The record includes the following testimony.
 
 
 6
 Donald Larry Jones, a lieutenant in Hobbs' operation beginning in April 1977 and previously a street dealer working for another Hobbs lieutenant, reported his dealings with each of the defendants. While he was still a street dealer, Jones purchased heroin from Dennis English in December 1976 and January 1977. English told Jones that he was selling heroin for Hobbs. Jones was subsequently directed to William Jewett for a supply of heroin in return for work Jones had performed for Clifford Hobbs and for Mable Woods, with whom Hobbs lived. Jewett sold heroin to Jones in March and April 1977.
 
 
 7
 When Jones first became a lieutenant, Johnnie Caradine was one of three street dealers Jones supplied with heroin. In each transaction with Caradine, Jones provided 10 to 20 "bindles" or packets of heroin. Caradine sold these, returning $17.00 to Jones for each bindle. Jones subsequently turned these amounts over to Hobbs. In August 1977, Preston Sellers became a street dealer supplied by Jones.
 
 
 8
 In June 1977, Hobbs went to California to purchase heroin. Donald Jones telephoned him three times to determine when Hobbs would return and where Jones could obtain more heroin. When Hobbs returned to Des Moines, he instructed Jones to contact Don Williams, a member of Hobbs' organization, who was to direct Jones to the source of his next supply of Hobbs' heroin. Complying with these directions, Jones obtained 30 bindles of the promised heroin from defendant William Monroe. Monroe told Jones to return the profits from the sale of 20 bindles to Don Williams. Jones complied, and the next day he returned to Monroe for more heroin, again directed to do so by Don Williams. At that time Monroe stated that he had destroyed his remaining supply during an encounter with police.
 
 
 9
 Loraine Moomey, a police informant, testified that between January and August 1977, she purchased heroin from defendants English, Jewett, Caradine and Sellers, dealing several times with each. During most of this period, Moomey was working for Officer Jack Morton of the Des Moines police narcotics unit. Morton's testimony at trial corroborated Moomey's activities.
 
 
 10
 In addition, Joe Lewis, a heroin user, testified that he was paid in heroin for odd jobs he performed for Clifford Hobbs and Mable Woods. At Hobbs' direction, Lewis went to Dennis English, among others, for delivery of the heroin.
 
 
 11
 Ellen Sue Newton, a heroin user, testified that on various occasions she accompanied William Monroe to the home of Mable Woods' daughter. Each time Monroe entered the house alone, and when he returned Newton and Monroe immediately used heroin together.
 
 
 12
 Gail Hill, a heroin user and dealer supplied by Donald Jones, testified that Preston Sellers helped her sell heroin obtained from Jones and that Sellers sometimes sold some of Jones' supply alone. Another witness, Jill Seibert, reported that at her request, Preston Sellers supplied the first heroin she had ever used.
 
 
 13
 Defendants urge that the testimony of Jones and Moomey should be discounted as that of convicted felons, heroin addicts and immunized coconspirators. Nevertheless, unless incredible or unsubstantial on its face, the testimony of an accomplice is sufficient to sustain a conviction. United States v. Abrahamson, 568 F.2d 604, 607 (8th Cir. 1978). The credibility of these witnesses and the weight to accord their testimony are matters entrusted to the jury. United States v. Scholle, 553 F.2d 1109, 1119 (8th Cir.), Cert. denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977). The evidence need not "exclude every hypothesis except that of guilt" as long as it is sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty. United States v. Collins, 552 F.2d 243, 245 (8th Cir.), Cert. denied, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977). Furthermore, "(i)n order to convict a defendant of conspiracy, it is not necessary to prove that he knew all of the conspirators or that he was aware of all details of the conspiracy. A showing that the defendant knowingly contributed efforts in furtherance of it is sufficient." United States v. Schmaltz, 562 F.2d 558, 560 (8th Cir.), Cert. denied, 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 315 (1977). We have reviewed the record, and we find substantial evidence upon which the jury could have found affirmative cooperation and knowing participation in the Hobbs heroin distribution operation by each defendant.[3]
 
 II.
 
 14
 William Jewett contends that three overt acts alleged in the indictment relating conduct specifically by him were not established by the evidence and that it was error to include them in the court's charge to the jury. However, Jewett does not suggest a failure of proof with respect to other overt acts alleged in the indictment. Furthermore, testimony by Donald Jones and Loraine Moomey provided proof of additional overt acts and a basis for the jury's finding of Jewett's complicity in the narcotics scheme.
 
 
 15
 In a conspiracy prosecution, the government is not limited to proof of only those overt acts charged in the indictment and in fact need not prove every overt act alleged. United States v. Harris, 542 F.2d 1283, 1300 (7th Cir. 1976), Cert. denied, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); United States v. Adamo, 534 F.2d 31, 38 (3d Cir.), Cert. denied,429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976). In addition, if an alleged overt act has not been proved, its submission to the jury is harmless error when the jury is presented with other overt acts in furtherance of the conspiracy which were sufficiently supported by the evidence. United States v. Bletterman, 279 F.2d 320, 322 (2d Cir. 1960); Giardano v. United States,251 F.2d 109, 115 (8th Cir.), Cert. denied, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958).[4]
 
 
 16
 Before trial, Jewett moved for a continuance on the ground that his attorney could not be present at trial because of a scheduling conflict. However, Mr. Robert Taha, a partner of Jewett's attorney, appeared at trial on Jewett's behalf. Jewett concedes that he was well represented by Mr. Taha, and in fact the record reveals able, well-prepared and thorough representation. We find no prejudice or abuse of discretion in the district court's refusal to postpone the date of trial. See generally, United States v. Little, 567 F.2d 346, 348-49 (8th Cir. 1977), Cert. denied, 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1978).
 
 
 17
 In the indictment, specific details as to the role of defendant Donald Allen were not provided except for allegations that as a member of the conspiracy, he sold heroin to Loraine Moomey in February and March 1977. His pretrial motion for a bill of particulars was denied. At trial, William Givens, a member of Hobbs' organization, testified that he too had purchased heroin from Allen. Allen claims that he was unfairly surprised by Givens' testimony and unfairlydenied an opportunity to prepare for it because of the denial of his pretrial motion. However, Allen concedes that he was not entitled to a pretrial list of government witnesses or disclosure of the government's case. United States v. Little, 562 F.2d 578, 581 (8th Cir. 1977). Nor does he claim that the indictment was insufficient to inform him of any element of the charge against him. Id. We reject Allen's contention that he was entitled to be informed before trial of every overt act in furtherance of the conspiracy which the government intended to prove. "The granting or denying of a motion for a bill of particulars lies in the broad discretion of the trial court." Id., citing United States v. Brown, 540 F.2d 364, 371 (8th Cir. 1976). We find no abuse of discretion.[5]
 
 
 18
 Preston Sellers had previously been charged in Iowa state court with delivery of heroin and conspiracy to deliver heroin. Pursuant to a plea bargain, he was convicted of the lesser offense of possessing heroin with intent to deliver as an accommodation. Sellers contends that his subsequent federal prosecution for the same conduct underlying the state charges placed him in double jeopardy, violated the Justice Department's "Petite policy" and amounted to prosecutorial vindictiveness depriving him of due process.
 
 
 19
 Dual state and federal prosecutions for offenses arising out of the same acts do not violate the double jeopardy clause. Each sovereign is entitled to prosecute a defendant for acts made criminal under its own laws. Rinaldi v. United States, 434 U.S. 22, 28, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977); United States v. Wallace, 578 F.2d 735, 739 (8th Cir. 1978), Cert. denied, 439 U.S. 898, 99 S.Ct. 263, 58 L.Ed.2d 246 (1979).
 
 
 20
 The United States Department of Justice has, however, adopted a practice generally known as the "Petite policy" "under which it declines to bring a federal prosecution after a state prosecution unless the reasons for the successive federal prosecution are compelling." United States v. Wallace, supra, 578 F.2d at 739-40.
 
 
 21
 Sellers' motions to dismiss the indictment for violation of the Justice Department's Petite policy and for additional discovery on this issue were properly denied by the district court. We have previously ruled that an indictment will not be subject to dismissal on this ground.
 
 
 22
 We must sustain the trial court's refusal to look behind the Petite waiver and we must reject the defendants' speculative denigration of the Government's grounds for this waiver for the same reason. The decision to waive the Petite policy involves an exercise of prosecutorial discretion which is an improper subject for judicial evaluation. * * * We decline, as did the trial court, the invitation to become embroiled in a discretionary matter which, under our system of government, has been clearly entrusted to the executive branch. We will not look behind the Government's reasons for waiving the Petite policy.
 
 
 23
 Id. at 740. Accord, Delay v. United States, 602 F.2d 173 (8th Cir. 1979).
 
 
 24
 As for Sellers' charge of prosecutorial vindictiveness, we find nothing in the record beyond defendant's bare allegations to support this contention. Sellers asserts that his prosecution in this case was motivated by the light sentence he received in state court. He ignores the fact that thirty-three other members of the same conspiracy were also indicted by the federal grand jury. Apart from his double jeopardy and Petite policy arguments, which present no defense, Sellers has offered no plausible reason why he should have been exempt from federal prosecution. This is not a case of selective prosecution; See United States v. Ojala, 544 F.2d 940, 943-45 (8th Cir. 1976); nor of resentencing or reprosecution in retaliation for a defendant's exercise of a procedural, statutory or constitutional right. See generally, Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); United States v. Groves, 571 F.2d 450, 453-54 (9th Cir. 1978); United States v. Stacey, 571 F.2d 440, 443-44 (8th Cir. 1978).
 
 III.
 
 25
 Defendants urge that the district court was without authority to impose a special parole term as part of their sentences for conspiracy to distribute heroin in violation of 21 U.S.C. § 846. They rely on United States v. Mearns, 599 F.2d 1296 (3d Cir. 1979), Aff'g 461 F.Supp. 641 (D.Del.1978); United States v. Jacquinto, 464 F.Supp. 728 (E.D.Pa.1979); Fassette v. United States, 444 F.Supp. 1245 (C.D.Cal.1978). These decisions hold that the special parole term which must accompany any sentence of imprisonment for the substantive offenses defined in 21 U.S.C. § 841 was intentionally omitted by Congress when the penalty was prescribed for conspiracy to commit these offenses, 21 U.S.C. § 846.
 
 
 26
 Heroin is a Schedule I controlled substance, and its distribution is punishable under 21 U.S.C. § 841(b)(1)(A) by imprisonment of not more than 15 years, a fine of not more than $25,000 or both. Section 841(b)(1)(A) also states:
 
 
 27
 Any sentence imposing a term of imprisonment under this paragraph shall * * * impose a special parole term of at least 3 years in addition to such term of imprisonment * * *.
 
 21 U.S.C. § 846 states:
 
 28
 Any person who attempts or conspires to commit any offense defined in this title is punishable by Imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
 
 
 29
 (Emphasis added.) Because section 846 speaks only of "imprisonment or fine or both" and omits specific reference to the mandatory special parole term for commission of the substantive offenses, defendants assert that inclusion of the parole term in their sentences was illegal. They urge that parole is a form of punishment distinct from imprisonment or fine, and that had Congress intended to impose this additional penalty for violation of section 846, it should have stated so expressly.
 
 
 30
 We think the better position is that taken by the Fourth and Tenth Circuits in United States v. Burman, 584 F.2d 1354, 1358 (4th Cir. 1978) and United States v. Jacobson, 578 F.2d 863, 868 (10th Cir. 1978), Cert. denied, 439 U.S. 932, 99 S.Ct. 324, 58 L.Ed.2d 327 (1978). Accord, United States v. Dankert, 507 F.2d 190, 191 (5th Cir. 1975) (upholding a special parole term under 21 U.S.C. § 963 for conspiracy to commit the importation offenses described in 21 U.S.C. § 952(a)(1). The language of section 963 is virtually identical to that of section 846).
 
 
 31
 These decisions reason that the special parole term is an integral part of any term of imprisonment imposed under 21 U.S.C. § 841. When imprisonment is included, a special parole term is mandatory. The parole term has no separate existence as a possible penalty. It must accompany imprisonment; it does not accompany a fine, and it may not be imposed alone. See United States v. Jacobson, supra, 578 F.2d at 868:
 
 
 32
 From the wording in § 841(b)-(c), it would appear that Congress viewed the special parole term as being a part of the term of imprisonment to which it was appended. Paragraphs (1) to (3) of § 841(b) all make a special parole term mandatory whenever imprisonment is also imposed. Thus, a parole term may never be imposed without imprisonment; it must always accompany imprisonment. Section 841(c) provides, in addition, that violation of the special parole may result in an increase in the original term of imprisonment to the extent of the length of the special parole term.
 
 
 33
 The nature of criminal enterprises prohibited by section 846 and the penalties for violation of that section are both defined with reference to section 841. "(T)he terms 'imprisonment or fine or both' only have meaning by reference to the sentences imposed under substantive offense statutes." United States v. Burman, supra, 584 F.2d at 1358. Thus the entire punishment provision of section 841 should be considered to be incorporated into section 846. We think that this view represents a rational interpretation of the language "The maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy," 21 U.S.C. § 846 (emphasis added).[6]
 
 
 34
 Finally, William Monroe objects to his sentence as excessive. The thrust of Monroe's argument is that he should have received a lighter sentence than that given certain other defendants whose participation in the conspiracy Monroe characterizes as greater than his and who have prior criminal records. We customarily do not substitute our own judgment for that of the district court in sentencing decisions. United States v. Lincoln, 589 F.2d 379, 380 n.2 (8th Cir. 1979). Monroe's sentence was within the statutory limits and does not reflect an abuse of discretion.
 
 
 35
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa
 
 
 [2]
 Defendant Donald Allen does not contest the sufficiency of the evidence linking him to the Hobbs conspiracy
 
 
 [3]
 We decline defendants' request that we take this opportunity to abandon the traditional rule that "(o)nce there is satisfactory proof that a conspiracy exists, a particular individual's participation therein may be established by evidence that otherwise seems slight." United States v, Hutchinson, 488 F.2d 484, 490 (8th Cir. 1973), Cert. denied, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). We agree with defendants that this principle does not abrogate the rule requiring guilt to be established beyond a reasonable doubt. However, the record reflects substantial evidence upon which the jury could have found beyond a reasonable doubt that each of the defendants was a participant in the Hobbs conspiracy to distribute heroin
 
 
 [4]
 Defendant's reliance on United States v. Easom, 569 F.2d 457 (8th Cir. 1978) is misplaced. In that case we merely held that it was error to instruct the jury that they could base a finding of conspiracy in part upon an overt act which was committed before the existence of the conspiracy began. Id. at 459
 
 
 [5]
 A tape recording of a conversation between Donald Jones and Loraine Moomey was received into evidence. Both participants also testified as government witnesses concerning the recording. Donald Allen, whose name was mentioned on the tape, contends that the combined effect of the testimony and tape recording was to overemphasize this evidence. At trial, Allen objected to the admission of the tape. On appeal, he concedes that the recording itself is the best evidence of the conversation, United States v. McMillan, 508 F.2d 101, 105 (8th Cir. 1974), Cert. denied, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), but charges that the additional testimony by the witnesses was "prejudicially cumulative." We disagree. Most of the testimony concerning the tape served as foundation for its admission, and Allen was mentioned in little more than a passing reference. Furthermore, other evidence of Allen's guilt was direct and substantial
 
 
 [6]
 We have consistently affirmed judgments of conviction in which the sentences for violation of 21 U.S.C. § 846 included special parole terms. See, e. g., United States v. Powell, 564 F.2d 256 (8th Cir. 1977), Cert. denied, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 495 (1978); United States v. Losing, 560 F.2d 906 (8th Cir.), Cert. denied, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); United States v. Carlson, 547 F.2d 1346 (8th Cir. 1976), Cert. denied, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977); United States v. Rich, 518 F.2d 980 (8th Cir. 1975), Cert. denied, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976). However, the legality of such sentences was not at issue in these cases
 In Timmreck v. United States, 577 F.2d 372 (6th Cir. 1978), Rev'd, --- U.S. ----, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), a defendant who pleaded guilty to conspiracy to distribute a controlled substance, 21 U.S.C. § 846, had not been informed "about the three year minimum mandatory special parole term that 21 U.S.C. § 841(b)(1)(A) requires to be added to any other sentence meted out for the offense charged." Id., 577 F.2d at 373. The Sixth Circuit permitted the defendant to raise this issue in a 28 U.S.C. § 2255 motion and vacated his sentence for violation of Fed.R.Crim.P. 11. The Supreme Court reversed, holding that this violation of Rule 11 did not justify collateral relief. Both the circuit and Supreme Court opinions assumed a failure to inform the defendant of a valid potential sentence which was in fact imposed, i. e., 10 years imprisonment, a $5000 fine and a 5 year special parole term for violation of 21 U.S.C. § 846.